The North Atchison Bank v. Gay.

THE NORTH ATCHISON BANK v. GAY *et al.;* GORDON *Appellant.*

114 203
77a 431

Division Two, February 14, 1893.

1. **Surety:** NOTE: VIOLATION OF AGREEMENT AS TO DELIVERY. Where one signing a note as surety leaves it in the possession of his principal, to be delivered only on condition that it is signed by other sureties and the principal makes a delivery in violation of the agreement to the obligee, who has no notice of the same, the surety will be bound.

2. ———: ———: CONSIDERATION. The indorsement of the amount of the note on an overdue note held by the principal and the extension of the time of payment of the old note constituted a sufficient consideration for the new note.

3. ———: ———: ———. An agreement by the cashier of a bank with one not to take notes with the latter's name on them as sureties, unless they contain the names of other sureties who are solvent, is without consideration.

4. **Note:** ATTORNEY'S FEE: EVIDENCE. Where a note provides for the payment of an attorney's fee if collected by an attorney or by process of law, an action on it shows that both conditions have happened, and the court needs no further evidence to authorize it in instructing for the additional sum.

*Appeal from Atchison Circuit Court.*—HON. C. A. ANTHONY, Judge.

AFFIRMED.

*Lewis & Ramsay* for appellants.

(1) The court erred in refusing to allow defendant to show that he signed the instrument as surety under an agreement with Gay, the principal, that it should not be delivered till one Wilkinson and others should sign

it; and that it was in violation of such agreement delivered to plaintiff, without obtaining their signatures, and that plaintiff, without surrendering any security or other valuable thing, simply credited the note on a prior unsecured $4,000 note of said Gay's to plaintiff. *Ayers v. Milrey*, 53 Mo. 516; *Davies v. Shumate*, 53 Md. 211; *Palmer v. Parr*, 121 Ind. 135. (2) The court erred in refusing to allow the defendant to show that Gay falsely represented the instrument to be a note for $2,500 simply, whereas in fact it provides for an additional ten per cent. if collected by attorney or process of law; that not being able to read it for want of glasses, he was induced to sign what he did not intend to sign. If he was fraudulently imposed upon in this way without his fault the instrument would be void even in the hands of a *bona fide* holder for value, and defendant should have been allowed to introduce his proof upon this point. *Frederick v. Clemens*, 60 Mo. 315; *Shutz v. Overjohn*, 60 Mo. 305; *Carman v. Moore*, 17 Mo. App. 92; *Bank v. Stanley*, 46 Mo. App. 440; *Bowers v. Thomas*, 62 Wis. 480. (3) The court erred in not allowing defendant to testify that he had a previous arrangement with J. W. Peck, the cashier of plaintiff, by which no obligation with defendant's name as surety should be received unless the note also contained other sureties that were solvent and good for the amount, and the cashier received this note in violation of such agreement. If such an agreement existed it was not only binding upon plaintiff but imposed greater diligence upon the bank as to all paper signed by defendant as surety. (4) When fraud in procuring or delivering the note was shown, it then devolved on plaintiff, not on the defendant, to show that he received it for value and without notice of fraud. *Carson v. Potter*, 22 Mo. App. 179; *Johnson v. McMurry*, 72 Mo. 278; *New v. Walker*, 6 West (Ind.), 873. (5) The

court erred in taking up and proceeding with the trial against this defendant, after having entered final judgment in the same case against the other parties to the suit. The final judgment against Gay ended the case at that point. *Rush v. Rush*, 19 Mo. 441; *Pomeroy v. Betts*, 31 Mo. 419; *Henry v. Gibbs*, 55 Mo. 570; *Canfield v. Farish*, 24 Mo. App. 110; *Transportation Co. v. Simms*, 28 Mo. App. 24. The judgment should be reversed.

*Malcolm McKillop* for respondent.

(1) The rule is now firmly established that an agreement between the principal and a surety that the instrument shall be delivered only upon a given condition does not bind a party who receives the obligation without notice of such agreement. The rule does not at all depend upon the negotiability of the instrument, nor upon any issue whether the plaintiff received it on account of a preexisting indebtedness, or whether he paid a new consideration. *State v. Potter*, 63 Mo. 212; *State v. Baker*, 64 Mo. 167; *State v. Modrel*, 69 Mo. 152; *State v. Hewitt*, 72 Mo. 603; *Wolff v. Schaeffer*, 74 Mo. 158; *State v. McGonigle*, 101 Mo. 353; *Platt-deutscher Club v. Tegler*, 17 Mo. App. 572, commenting on *Ayers v. Milroy*, 53 Mo. 416. (2) The rule requiring proof of an attorney's fee provided for in a note applies only where the amount is not specified in the note. 1 Randolph on Commercial Paper, sec. 205.

GANTT, P. J.—This suit was instituted against Will R. Gay, as principal, and David Gordon and Samuel May, as sureties, on the following written instrument:

"WESTBORO, Mo., October 10, 1888.
"$2,500.00.
"Ninety days after date we promise to pay to the order of North Atchison Bank $2,500, for value

received, with interest from maturity at the rate of ten per cent. per annum, together with an attorney's fee of ten per cent. of the whole amount due if collected by attorney or process of law.

"WILL R. GAY,

"DAVID GORDON,

"SAMUEL MAY.

"Payable at North Atchison Bank, Westboro, Mo."

Defendants, Will R. Gay and Samuel May, suffered judgment against them by default.

Defendant Gordon filed a separate answer in which he admitted signing the note but denied its delivery. Admitted the incorporation of plaintiff and then pleaded the following special defenses, to-wit: That said plaintiff never paid or surrendered in any manner any money or valuable consideration whatever for said instrument; that Gay represented that it was a note for only $2,500; that it would be promptly paid at maturity and that, before it was delivered, one A. B. Wilkinson and three solvent sureties would sign it also, and not having his glasses and relying on Gay, he signed the note; that these representations were all false and in violation of said agreement the note was delivered by Gay. He also alleges a contract with plaintiff not to accept paper with his name on it unless there were other solvent sureties also. He also charged that Gay turned over collateral securities sufficient to plaintiff to pay said note, and asks that it be compelled to credit it. Finally he charges that plaintiff knew Gay was insolvent and did not expect said note to be paid by Gay when it took it and that Gay turned over to plaintiff all his available property at the time and this was a fraud on defendant.

Plaintiff denied all fraud and all knowledge of the agreement for other sureties.

The cause was tried to a jury under instructions of the court.

The plaintiff to maintain its case introduced the instrument in writing in evidence and rested its case. Defendant Gordan then testified in substance, that on the seventeenth of October, 1888, he drove into Westboro to a livery stable; that as he drove up Gay and Peck, the cashier of the plaintiff bank, were standing on the sidewalk. He heard Gay say to Peck: "Will Uncle Dave be good on the note?" Peck run both hands in his pocket and walked off. Gay approached and requested him to sign a note for $2,500. He said he could not do it; but Gay insisted it would be a great accommodation; that five other good sureties would sign. Thereupon he went into plaintiff's bank and signed the note or instrument sued on. Peck, the cashier, was outside he says and just after signing the note Gay and the defendant Gordon came out on the sidewalk and Gay said to the cashier, "I will take this note and get the other names on it and send or bring it up and it will be all right, will it?" Peck said it would. No other names were mentioned in Peck's presence; but Gay mentioned Brown Wilkinson to defendant as one who would sign with them. The other names he could not call, except May, who did sign.

The defendant also called Peck, the cashier, who testified that the bank held a note on Gay for $4,000; that it was past due. About two weeks before the note in suit was given to the bank, the witness one day at Rockport requested Gay to arrange the $4,000 note, this being the usual custom of banks that when paper became due the maker should "either pay it or renew it." He says he saw defendant sign the note in the bank. Didn't hear anything about any names to go on the note and knew nothing of such an agreement. Gay afterwards sent him the note and on the same day it was

credited on the $4,000 note and about the same time a mortgage was given by Gay to secure the balance of the note. The note sued on and the mortgage satisfied the $4,000 note.

The court gave the following instruction for the defendant: "5. If the jury believe that, at the time defendant Gordon signed the contract or instrument in suit, it was the express understanding and agreement by and between defendants Gay and Gordon that said contract or instrument should not be delivered to the bank until one A. B. Wilkinson had signed the same as security thereon, and you further believe from the evidence, facts and circumstances in proof that J. W. Peck, the cashier of the bank, had knowledge of such agreement and understanding between Gay and Gordon, knew that Gordon understood from Gay that said contract or instrument was not to be delivered until it was signed by said Wilkinson, and you further find that said contract or instrument was delivered to the bank without the signature of said Wilkinson, your verdict should be for the defendant."

"And you are further instructed that the burden of proving that there was an agreement between Gay and Gordon that Wilkinson was to sign the contract or instrument of writing as surety, and that Peck knew of such agreement before he received the same and gave credit on the note, is upon the defendant."

The court refused to instruct that such an agreement, made without the knowledge of the bank, would release defendant, and refused to instruct on the alleged promise of the bank not to accept Gordon as surety unless there were other solvent sureties on the notes, and the court refused to instruct on the theory of a conspiracy between Gay and Peck to get Gordon to sign the note.

The jury found for plaintiff, and defendant Gordon appeals.

I. Since the decision in *State to use v. Potter*, 63 Mo. 212, it has been the settled law of this court that when a surety signs a bond or note and leaves it in the hands of his principal therein to be delivered only on condition that it is to be signed by other sureties, and the principal delivers the bond or note in violation of this agreement to the obligee, and the obligee has no notice of such an agreement, the surety will bound. *State ex rel. v. Modrel*, 69 Mo. 152; *State ex rel. v. Baker*, 64 Mo. 167; *State v. Hewitt*, 72 Mo. 604; *Wolff v. Schaeffer*, 74 Mo 158.

Hence the trial court very properly refused defendant's first instruction which ignored notice to the bank of the alleged agreement as to additional sureties. Instruction numbered 5 copied above gave defendant the benefit of the law as it is established in this state. It is his misfortune, if he could not convince the jury the bank knew of his agreement with Gay and of its violation. There was nothing on the face of the paper itself to indicate that it was incomplete.

II. Nor can we agree with learned counsel that the record shows no consideration for this note. The taking of this new note, extending the time of payment ninety days and crediting the old note with that sum as payment, was ample consideration for the promise in the new. *State Bank of St. Louis v. Frame*, 112 Mo. 502; *Crawford v. Spencer*, 92 Mo. 498; *Deere v. Marsden*, 88 Mo. 512.

III. The court very properly declined to hear the evidence of defendant to the effect that he had an agreement with the cashier not to take notes with his name on them unless they were otherwise solvent. The alleged promise was without any consideration and was no defense to this action.

VOL. 114—14

IV. Neither was there any error in giving plaintiff's first and only instruction. The contract provided that "if it should be collected by an attorney or by process of law," the attorney's fee of ten per cent. should be added. The action itself proved that both conditions had happened, *an attorney was collecting the note by process of law*. The court needed no further evidence to justify it in instructing for the additional sum.

V. The other instructions were properly refused because unsupported by the evidence. The irregularity in the judgment was not raised by the motion for new trial or in arrest and cannot be noticed here.

The court having given correct instructions and the jury having found the fact against the defendant upon competent evidence, we have no right to interfere with the verdict, and the judgment is affirmed. All concur.