## MECHANICS'-AMERICAN NAT. BANK v. COLEMAN.

(Circuit Court of Appeals, Eighth Circuit. February 10, 1913.)

### No. 3,814.

1. COURTS (§ 372*)—FEDERAL COURTS—DECISIONS OF STATE COURT—RULES OF DECISION.

> The effect of a provision for attorney's fees in a note is a matter of general or commercial law, with reference to which the federal courts are not bound by state decisions, but are entitled to form an independent judgment.
>
> [Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 977–979; Dec. Dig. § 372.*
>
> Conclusiveness of judgment between federal and state courts, see notes to Kansas City, Ft. S. & M. R. Co. v. Morgan, 21 C. C. A. 478; Union & Planters' Nat. Bank v. City of Memphis, 49 C. C. A. 468; Converse v. Stewart, 118 C. C. A. 215.]

2. COURTS (§ 372*)—FEDERAL COURTS—RULES OF DECISION—STATUTES.

> Judiciary Act Sept. 24, 1789, c. 20, § 34, 1 Stat. 92 (U. S. Comp. St. 1901, p. 581), declaring that the laws of the several states shall be regarded as rules of decision in trials at common law in the courts of the United.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

States in cases where they apply, is limited to state laws strictly local in character, and does not extend to contracts or other instruments of a commercial nature, the true interpretation and effect whereof are to be sought, not in the decisions of the local tribunals, but in the general principles and doctrines of commercial jurisprudence.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 977–979; Dec. Dig. § 372.*]

**3.** BILLS AND NOTES (§ 110*) — CONSTRUCTION — PROVISION FOR ATTORNEY'S FEES—EFFECT.

A provision in a note that, if it is not paid when due and is placed in the hands of an attorney for collection, the maker will pay the holder 10 per cent. additional on the principal and interest due as an attorney's fee, is in the nature of a penalty and will not be enforced except to provide indemnity to the holder.

[Ed. Note.—For other cases, see Bil's and Notes, Cent. Dig. § 221; Dec. Dig. § 110.*]

**4.** BILLS AND NOTES (§ 534*)—ATTORNEY'S FEES—VALUE OF SERVICES—EVIDENCE.

In general, no allowance will be made for attorney's fees in an action on a note, pursuant to a provision for such fees in the note, in the absence of evidence as to the value of the attorney's services.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1946, 1947; Dec. Dig. § 534.*]

**5.** BILLS AND NOTES (§ 126*)—ATTORNEY'S FEES—NEGOTIABLE INSTRUMENTS LAW—EFFECT—"SUM CERTAIN."

Under the Missouri Negotiable Instrument Law (Laws 1905, p. 244) § 2, subsec. 5, providing that the sum payable on a note is a sum certain within the meaning of the act, though it is to be paid with costs of collection or an attorney's fee in case payment shall not be made at maturity, does not render a provision in a note executed in Missouri, providing for 10 per cent. attorney's fees, conclusive either as to the right of the holder to recover such fees or the amount to be allowed.

[Ed. Note. –For other cases, see Bills and Notes, Cent. Dig. §§ 272, 273; Dec. Dig. § 126.*]

**6.** BILLS AND NOTES (§ 126*)—ATTORNEY'S FEES—SERVICES OF ATTORNEY—"PLACED WITH ATTORNEY FOR COLLECTION."

Where a bank, on discovering that it had discounted certain forged notes for a bankrupt, immediately took steps to ascertain the bankrupt's financial condition, agreeing to keep the business running until the report of the experts could be received, and then delivered the notes, which provided for 10 per cent. attorney's fees if placed in the hands of an attorney for collection, to the bank's attorney, the president of the bank testifying that the attorney was employed to keep the bank straight on the felonious part of handling forged notes and getting the money for them and that he was to collect the notes whenever it was necessary, but there was no intention that suit should be brought thereon, and no suit was actually brought prior to bankruptcy proceedings against the maker the notes were not "placed in the hands of an attorney for collection" within such clause, and the bank was therefore not entitled to the allowance of any sum for attorney's fees against the bankrupt's estate.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 272, 273; Dec. Dig. § 126.*]

**7.** BANKRUPTCY (§ 482*)—CLAIMS—SERVICES OF ATTORNEY FOR CLAIMANT.

There is no authority for allowance in bankruptcy proceedings of compensation from the estate for services of an attorney employed by a secured or nonsecured creditor.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 874–876, 897; Dec. Dig. § 482.*]

---

Appeal from the District Court of the United States for the Eastern District of Missouri; David P. Dyer, Judge.

Claim of the Mechanics'-American National Bank against Frank B. Coleman, trustee in bankruptcy of the Embree-McLean Carriage Company. A referee's order overruling a motion to reduce the claim by the amount of certain attorney's fees, claimed pursuant to a provision in the notes on which the claim was based, having been disapproved and reversed, the bank appeals. Affirmed.

Walter H. Saunders, of St. Louis., Mo., for appellant.

George M. Block, of St. Louis, Mo. (F. H. Sullivan, of St. Louis, Mo., on the brief), for appellee.

Before HOOK and SMITH, Circuit Judges, and VAN VALKEN-BURGH, District Judge.

VAN VALKENBURGH, District Judge. The appellant is a national banking corporation of St. Louis, Mo. The appellee is the trustee in bankruptcy of the Embree-McLean Carriage Company, a corporation, formerly doing business in the same city. About May 1st, 1910, the president of the appellant bank learned that the Carriage Company had negotiated with said bank forged notes to the extent of about $20,000. Immediately thereafter a meeting of the directors of the Carriage Company was held, at which the president of the bank was present, and at this meeting it was determined to elect an employé of the bank secretary of the Carriage Company, and place him in charge of its affairs. It was at first suggested that a receiver be appointed for the Carriage Company, but to this the president of the bank objected, until an expert accountant should make an examination of the financial condition of the company, agreeing that the bank would discount the bills receivable of the company sufficiently to carry the concern until its true condition could be determined by such examination. Inasmuch as the bank was the largest creditor of the Carriage Company, holding its obligations in an amount exceeding $70,000, this suggestion of its president was adopted. The expert accountants were employed and made their report July 10, 1910. This report showed so conclusively that the Carriage Company was insolvent that, by common consent of all interested, a petition in bankruptcy was filed against it on the 15th day of July, 1910, and thereafter, on August 2, 1910, said company was adjudicated a bankrupt. Shortly thereafter, the bank filed its claim against the Carriage Company which, in a net amount of $24,950.36, was duly allowed. Included in this claim were 13 notes aggregating approximately $21,596. Each of said notes was secured by pledged collateral, and contained the following clause:

"In case said above note is not paid when due and payable and the same is placed in the hands of an attorney for collection we agree to pay to the holder thereof 10 per cent. additional on the principal and interest due thereon as an attorney's fee."

At the time the bank filed its original claim, to which reference has been made, no mention was made of this clause, nor was any allowance asked thereunder.

August 2, 1911, on the last day of the year following the adjudication, the appellant filed what it called a supplemental proof of claim made up of various items aggregating $9,303.52; one of which, for $2,159.60, was based upon the clauses allowing 10 per cent. for attorney's fees. This additional claim was allowed by the referee; thereafter, the trustee filed his motion to reduce this supplemental claim of $9,303.52 by the amount asked for attorney's fees, as aforesaid, or at any rate that such fees be fixed at a reasonable amount for services actually rendered, if any. At the hearing of this motion before the referee it was shown that, at the time it was decided that an expert accountant should examine the affairs of the Carriage Company, the president of the bank assured the officers of that company that, if the course suggested by him was adopted, the business would go on until an examination could be made, and that there should be no change in the situation until the result of that investigation could be known. Mr. Hill, the bank's president, testified, however, that some time in May, 1910, and therefore during the period of investigation referred to, he placed these notes in the hands of Mr. Saunders, the bank's attorney. He told Saunders that he had learned that $20,000 of forged or fictitious paper of the Carriage Company had been discounted at the bank; that he wanted Saunders to take these notes and collect them whenever it was necessary, and to "keep him (Hill) straight on the felonious part of handling forged notes and getting the money for them." He testified further that Saunders took the notes to his office, and returned them to the bank in a few days. They were made payable, on demand, at the appellant bank; and to satisfy this provision Saunders made formal demand for payment upon Hill, the president of the bank. No demand, however, was made upon the Carriage Company, nor was this action communicated to that company, nor any one in charge of its affairs. No suit was brought or contemplated. Mr. Hill testified that he gave no directions to Saunders; that he knew that if suit were to be brought on the notes at any time prior to the report of the expert accountants it would precipitate proceedings in bankruptcy; that he knew the company had no money with which to meet its obligations to the bank, but that all its receipts were being deposited in the bank; that he did not want suit to be brought, because he did not desire proceedings in bankruptcy to be instituted. However, when the report of the experts came in it was immediately resolved to appeal to the bankruptcy court. Consequently no action upon the notes themselves was either taken or contemplated by the bank's attorney, other than to make the formal demand to which reference has been made. Meantime, the bank did proceed, in the usual course, to collect the collateral held as security, and Saunders, as attorney for the bank, was consulted, and advised the bank as to its rights and its attitude toward this collateral. He did not, however, have charge of the collateral, which remained with the bank, and was handled by its officers and employés in the usual manner. Respecting the services of Saunders, President Hill testified as follows:

"Q. What did Saunders do in relation to the collection of these notes between the time that you say you gave them to him in May and the time you got the Price, Waterhouse report? A. I don't know what he did except he did a great deal of work and made us do a great deal of work.

"Q. In relation to this? A. I said that.

"Q. What were you called upon to do during that time? A. Give collateral, due dates, and everything that was bad and anything that we thought good.

"Q. You mean simply looking up the collateral? A. Yes, sir.

"Q. Well, I am talking about the principal notes with reference to the Embree-McLean Carriage Company; what, if any, steps did he take against the Embree-McLean Carriage Company, do you know? A. I really don't know.

"Q. Did he take any steps, do you know? A. He made demand on us for the payment of them.

"Q. You were not an officer in the Embree-McLean Carriage Company? A. No, sir; but these notes were payable at our bank."

Mr. Hill stated frankly that he had no agreement with Saunders as to what fee the latter should receive for any services rendered the bank in connection with these notes; that all he expected to pay was a reasonable compensation for services actually performed.

Appellant, in the hearing before the referee, stood upon the clause in the note, providing a collection fee of 10 per cent., as conclusive, and offered no testimony as to the value of the services rendered. This was the view adopted by the referee, by whom the motion of the trustee to reduce the supplemental claim of the bank was overruled. The order of the referee overruling this motion was taken to the District Court for review, where the same was disapproved and reversed, and the position of the trustee sustained. From this order the bank brings its appeal to this court.

[1] The position of counsel for appellant is that a clause in a note stipulating for an attorney's fee, provided the note is placed in the hands of an attorney for collection, is valid, enforceable, and conclusive as to amount; that such is the law of the state of Missouri, in which this contract was made, and therefore binding upon this court. The proposition, as stated, cannot be accepted in its entirety. The question here presented is one which falls within the domain of general or commercial law. It involves simply the construction and effect of recitals in negotiable instruments, and no question of right under the Constitution and statutes of a state. In such matters the decisions of the state court are not controlling in the federal tribunals.

"It is not only the privilege, but the duty, of the federal courts, imposed upon them by the Constitution and statutes of the United States, to consider for themselves, and to form their independent opinions and decisions upon, questions of commercial or general law presented in cases in which they have jurisdiction, and it is a duty which they cannot justly renounce or disregard." Independent School Dist. v. Rew, 111 Fed. 1, 49 C. C. A. 198, 55 L. R. A. 364.

[2] The doctrine thus announced by this court finds abundant confirmation in the decisions of the Supreme Court of the United States. The thirty-fourth section of the Judiciary Act of 1789, declaring that the laws of the several states shall be regarded as rules of decision in trials at common law in the courts of the United States in cases where they apply, is limited in its application to state laws strictly local. It

does not extend to contracts or other instruments of a commercial nature, the true interpretation and effect whereof are to be sought, not in the decisions of the local tribunals, but in the general principles, and doctrines of commercial jurisprudence. In such cases it is the right and duty of the national courts to exercise their own judgment. Swift v. Tyson, 16 Pet. 1, 10 L. Ed. 865; Burgess v. Seligman, 107 U. S. 20, 2 Sup. Ct. 10, 27 L. Ed. 359.

In Liverpool Steam Co. v. Phenix Ins. Co., 129 U. S. 397, 443, 9 Sup. Ct. 469, 472 (32 L. Ed. 788), the Supreme Court, speaking through Mr. Justice Gray, said:

"But on this subject, as on any question depending upon mercantile law and not upon local statute or usage, it is well settled that the courts of the United States are not bound by decisions of the courts of the state, but will exercise their own judgment, even when their jurisdiction attaches only by reason of the citizenship of the parties, in an action at law of which the courts of the state have concurrent jurisdiction, and upon a contract made and to be performed within the state."

It is, of course, true, as stated in Burgess v. Seligman, supra, that:

"Even in such cases, for the sake of harmony and to avoid confusion, the courts of the United States will lean towards an agreement of views with the state courts, if the question seems to them balanced with doubt."

[3] The general law and the weight of authority in the majority of states, whether based upon express provision of statute, or otherwise, are against the allowance of such attorney's fees under a provision of this character, except for indemnity and in the nature of a penalty as distinguished from liquidated damages. In United Shoe Machinery Co. v. Abbott, 158 Fed. 762, 86 C. C. A. 118, this court stated the principle in the following language:

"Legal interest is the measure of damages for the failure to pay debts when they are due, and hence a contract to pay an amount in excess of such interest on account of a default in the payment of money when it is due is an agreement for a penalty which the courts will not enforce."

[4] It is quite generally held that when no testimony is offered as to the value of services attorney's commissions should be disallowed. In re Torchia (D. C. Pa.) 185 Fed. 576–583.

In Chestertown Bank of Maryland v. Walker, 163 Fed. 511–513, 90 C. C. A. 140, the Court of Appeals for the Fourth Circuit held that a contract in a note to pay a collection fee if the note is not paid at maturity is valid to the extent of a reasonable fee actually expended or contracted to be paid, but no further; observing that in no state where usury laws are in effect are such contracts permitted to be enforced if the charges are either unreasonable or may be made a subterfuge for usurious exactions.

In Re Fabacher (D. C. La.) 193 Fed. 556–558, a 10 per cent. stipulation was held to justify only a reasonable fee. The court said:

"This does not mean he must necessarily recover the amount stipulated by the act of mortgage, as this provision relates solely to his remedy. The lender is usually apt to stipulate for as high a rate of attorney's fees as he possibly can in order to fully protect himself, while the borrower will no doubt agree to almost any amount of fee, having no idea at the time that he

will ever be called upon to pay it. When bankruptcy intervenes, however, the rights of general creditors must be considered, and the bankruptcy court should deal with the question so that equity be done to all parties."

In Merchants' Bank v. Thomas, 121 Fed. 306–312, 57 C. C. A. 374, the Court of Appeals for the Fifth Circuit held that a stipulation for 10 per cent. was reasonable, where not obviously excessive, but that such an amount was not conclusive, and that the creditor is not permitted to profit thereby; the theory being that the creditor has become indebted to an attorney and the purpose of the stipulation is to indemnify him against such expense. To the same effect are In re Gebhard (D. C. Pa.) 140 Fed. 571; McCabe v. Patton et al. (C. C. A. Third Circuit) 174 Fed. 217, 98 C. C. A. 225.

In Missouri the courts have uniformly recognized the validity of such stipulations for attorney's fees; but prior to 1905 it was held that the notes were thereby rendered nonnegotiable for uncertainty as to amount. Creasy v. Gray, 88 Mo. App. 454; Bank v. Jacobs, 73 Mo. 35; McCoy v. Green, 83 Mo. 626; Bank v. Gay, 63 Mo. 33, 21 Am. Rep. 430; Clark v. Barnes, 58 Mo. App. 667; Bank v. Marlow, 71 Mo. 618; Bank v. Gay, 71 Mo. 627.

[5] In that year the Negotiable Instrument Law was passed, which contained the following provision:

"The sum payable is a sum certain within the meaning of this chapter, although it is to be paid * * * (5) with costs of collection, or an attorney's fee in case payment shall not be made at maturity." Laws 1905, p. 244, § 2.

This removed the former disability, and since that time notes containing such clauses are held to be negotiable.

It is urged by counsel for appellant that this act is a statutory recognition, not only of the validity of such provisions for an attorney's fee, but also of the conclusiveness of the amount named therein. Without conceding that this court is bound by any local construction of purely commercial contracts, we are of opinion that neither this statute, nor the decisions of the appellate courts of Missouri, bear the construction placed upon them by counsel.

Prior to the passage of this act it was lawful to contract for the payment of an attorney's fee as an incident to the collection of a note not paid at maturity. Such a contract, however, was held to destroy the negotiability of the paper. The act of 1905 restored the element of negotiability, but added nothing to the validity of the provision that had always existed. The element of certainty thus introduced is arbitrary, not actual. To illustrate: A provision for the payment of "a reasonable attorney's fee," without fixing the amount by percentage, or otherwise, would be uncertain in fact, but would not destroy the negotiability of the note under the terms of this statute. So, also, costs of collection, other than attorney's fees, are never definitely known. It is evident therefore that the effect of such clauses has not been changed by any express provision of law.

Turning to the decided cases, we do not find the Missouri courts in conflict with the general trend of decision elsewhere. In North Atchi-

son Bank v. Gay et al., 114 Mo. 203, 21 S. W. 479, the contract provided that:

"If it should be collected by an attorney, or by process of law, an attorney's fee of 10 per cent. should be added."

In that very case an attorney was collecting by process of law. The note itself was for $2,500, which would make the collection fee $250. The court, in effect, held that this was not unreasonable under the circumstances, and was sufficiently supported by the provision in the instrument. The exception arose upon instructions to the jury; and the contention here urged does not appear to have been sharply defined nor considered by the court.

In Bank v. Martin, 129 Mo. App. 484, 107 S. W. 1108, the language was:

"If this note is not paid at maturity, the undersigned agree to pay reasonable expenses of collection, including attorney's fees."

The court held that this had reference to expenses incurred by the plaintiff in collecting the note; that it was "in the contemplation of the parties that if the note was not paid at maturity, and plaintiff should be put to the expense of compelling its collection by the assistance of an attorney, then such expense, if reasonable, should become a part of the debt." The Supreme Court of Missouri has repeatedly announced that it inclines toward a construction in favor of a penalty as against liquidated damages, at least where there is doubt and where the actual damage can be assessed by known rules or with reasonable certainty. The test is whether the amount ostensibly awarded, in the contract for the breach complained of, is or is not reasonably appropriate and just. May v. Crawford, 142 Mo. 390, 44 S. W. 260; Thompson v. St. Charles County, 227 Mo. 220–238, 126 S. W. 1044.

No other Missouri cases bearing upon this disputed point have been found, or called to our attention. In discharge of the duty imposed upon us to consider for ourselves and form our independent opinions upon questions of commercial and general law presented for our decision, we are constrained to hold that this provision in the notes in suit calls for the payment only of a reasonable attorney's fee, for services actually rendered in conformity with its terms; that such is the decided weight of authority; and that neither the statute law of Missouri, nor the decisions of its courts of last resort, are in conflict therewith.

[6] It remains to consider only whether the attorney for the bank rendered any services within the intendment of the clause providing for attorney's fees. We do not think so. The language, "placed in the hands of an attorney for collection," means something more substantial than the purely formal acts disclosed by this record. At the time these notes are said to have been given to Saunders no suit was contemplated, nor was this or any other form of collection proceeding desired. The bank had obligated itself, morally at least, to take no steps which would change the situation until the expert accountants should make their report. There was no appreciable transfer of possession of the notes from the bank to its attorney. Neither the collat-

eral nor its collection was intrusted to him, but the latter proceeded through the regular bank officials—aided, no doubt, by the advice and counsel of the bank's attorney. It is probable that—as Mr. Hill testified—Saunders was employed more particularly to keep the bank "straight on the felonious part of handling forged notes and getting the money for them." He was to collect these notes "whenever it was necessary"; but that necessity had not arisen, so far as legal proceedings were concerned, and did not arise until after bankruptcy had intervened. It is true that Mr. Saunders represented the bank before the referee in resisting a motion of the trustee to expunge the bank's claim; but this action was incidental to the proceedings in bankruptcy, and cannot support a claim for attorney's fees under this provision in the notes.

[7] There is no authority to allow compensation from the estate for services of any attorney employed by a secured or nonsecured creditor in bankruptcy proceedings. Loveland on Bankruptcy, vol. 1, p. 254, par. 109; In re Hersey (D. C.) 171 Fed. 1004–1008. Neither the bank nor its attorney apparently conceived that such a demand was justified when the claim was originally filed, although it existed then, if at all, as fully as at any later period. Its tardy assertion, practically a year after the adjudication, stamps it as an afterthought.

Since it appears that these notes were not placed in the hands of an attorney for collection within the meaning of the language relied upon, and that no evidence was adduced as to the reasonable value of services rendered, if any, the motion of the trustee to reduce the allowance theretofore improvidently made was properly sustained.

The order and decree of the district court should therefore be affirmed.