# CHARLESTON

RALEIGH COUNTY BANK v. POTEET *et al.*

Submitted May 26, 1914.   Decided June 16, 1914.

1.  BILLS AND NOTES—*Stipulations for Attorney's Fee.*
     A stipulation in a negotiable promissory note for the payment of "five per cent collection fees" on the principal thereof, and in addition thereto "and $10.00 attorney fee in addition to the attorney's fee taxed or allowed by law" is, in this state, forbidden by the policy of the law and void and unenforcible.   (p. 512).

2.  SAME—*Attorney's Fees—Validity of Provision.*
     Chapter 81 of the Acts of 1907, ch. 98 A of the Code, known as the negotiable instruments law, does not legalize contracts expressly condemned and declared void by the statutes of this state, nor those forbidden by the policy of its laws.   (p. 520).

(MILLER and WILLIAMS, JUDGES, dissenting).

Error to Circuit Court, Raleigh County.

Action by Raleigh County Bank against J. H. Poteet and others. Judgment for plaintiff, and defendants bring error.

*Reversed and entered.*

*File & File* and *H. E. Stansbury,* for plaintiffs in error.

*J. E. Summerfield,* for defendant in error.

POFFENBARGER, JUDGE:

In this action on a note, a tender of the amount conceded

to be due was made after the institution of the action. Coming too late, it was wholly unavailing and futile, stopping neither interest nor costs, since we have no statute on the subject, modifying the common law. 28 Am. & Eng. Ency. 21, 38 Cyc. 147, 149, both citing numerous authorities.

Professing to be in debt, the writ claimed damages in the sum of $2500.00 and failed to specify the amount of the debt, wherefore, it varied from the declaration claiming $2200.00 as the principal of a note, $110.00 as commission for collection thereof and $10.00 as an attorney's fee in addition to the fee allowed by law. To cure this defect, the plaintiff amended the writ, with leave of the court and over an objection by the defendants. The amendment was properly allowed. Code, chap. 125, sec. 15; *Ryan* v. *Coal & Coke Co.,* 69 W. Va., 692; *Burns* v. *Grafton,* 61 W. Va., 410.

The inclusion in the judgment of the stipulated commission of 5 per cent., $110.00, is the basis of the principal complaint. Such notes have not been in common use in this state, and the validity of such a stipulation has never been passed upon by this court. An inference of a concensus of opinion among the members of the legal profession against it naturally arises from the absence of notes of that kind in the commercial paper of the state. Had it been regarded as legal and valid, no doubt they would have been abundant here as they are in other states in which such an addition is deemed valid; and our reports would afford many decisions affirming their validity and defining their operation, as do those of the states in which they have been sustained.

As to the validity of the stipulation, the authorities in the various jurisdictions are in conflict. The following decisions uphold it: *Shelton* v. *Aultman,* 82 Ala. 315; *Telford* v. *Garrels,* 132 Ill. 550; *Loan and L. Co.* v. *Klovdahl,* 55 Minn. 341; *Peyser* v. *Cole,* 11 Ore. 39; *Imler* v. *Imler,* 94 Pa. St. 372; *Parham* v. *Pulliam,* 5 Coldw. (Tenn.) 497; *Kranse* v. *Pope,* 78 Tex. 478; *McIntyre* v. *Cagley,* 37 Ia. 676; *Siegel* v. *Drum,* 21 La. Ann. 8; *McCormick* v. *Swein,* 36 Utah 6; *Bank* v. *Gay,* 114 Mo. 203; *Morgan* v. *Kiser,* 105 Ga. 104; *Alexander* v. *McDow,* 108 Cal. 25; *Cloud* v. *Rivord,* 6 Wash. 555; *Rinker* v. *Laner,* 13 Idaho 163.

In the following cases, it is denounced as a cover for usur-

ious interest and a means of exacting the same or as a mere unenforcible penalty. *Witherspoon* v. *Mussulman*, 14 Bush. (Ky.) 214; *Ohio* v. *Taylor*, 10 Ohio, 378; *Bullock* v. *Taylor*, 39 Mich. 137; *Dow* v. *Updike*, 11 Neb. 95; *Tinsley* v. *Haskins*, 111 N. C. 340; *Rixey, Trustee* v. *Pearre Bros.*, 89 Va. 113; *Boozer* v. *Anderson*, 42 Ark. 167.

By this collation, which does not include all the cases, by any means, but enough to disclose the attitudes of the various courts of last resort, a decided preponderance in number favoring the validity of the stipulation appears. But, in some of the states, it is authorized by statute. How many need not be ascertained. It is in Iowa for one. Notwithstanding the admitted preponderance, the solution of the question is one of reason as well as of authority and we are under no duty to yield to the mere force of numbers. Besides, the policy of this state, as disclosed by its statutes relating to costs and interest, and the concensus of legal opinion as revealed by a settled and long continued course of conduct in business, must be considered.

Impartial writers of recognized ability, after having considered both classes of cases and the reasoning upon which they stand, have unhesitatingly given their approval to those decisions which condemn the stipulation and refuse to enforce it. Mr. Daniel, in his work on negotiable instruments, expresses himself thus: "Unless there be some statute under which such stipulations are permissive, it certainly tends to the oppression of debtors to sanction their incorporation in commercial instruments; and they are therefore against the policy of the law and void." Judge Caldwell, in *Banks* v. *Sevier*, 14 Fed. Rep. 662, quotes from 14 Am. Law Rev. 858, as follows: "It seems to us to be more consistent with public policy to consider all such agreements absolutely void. They can readily be used to cover usurious agreements, and excessive exactions may be made under the guise of an attorney fee." Judge Cooley of Michigan, a great author as well as an able judge, expressed himself thus in *Bullock* v. *Taylor*, 39 Mich. 137: "A stipulation for such a penalty, we think, must be held void. It is opposed to the policy of our laws concerning attorney's fees, and it is susceptible of being made the instrument of the most grevious wrong and oppression. It

would be idle to limit interest to a certain rate, if, under another name, forfeitures may be imposed to an amount without limit. The provision in those notes is as much void as it would have been had it called the sum imposed by its true name of forfeiture or penalty. There is no consideration that can support it.''

This suggestion of lack of consideration prompts the inquiry as to what the borrower gets in exchange for his promise, and discloses the necessity of resort, on the part of courts in which the agreement is held valid, to the theory of indemnity. The agreement to pay costs and attorneys' fees is obviously not an agreement to pay for any service to be rendered to the promissor, the maker of the note, for such services are always rendered to and for the promissee, the payee of the note. It is a promise to pay for something done against the promissor and to his material injury. He derives no benefit from it. The detriment to the other party, occasioned by the default in payment is the only circumstance that could possibly constitute consideration for the promise. In that case, the injury is deprivation of the use of the money and the compensation for that is fixed and limited by the statutes, allowing only the legal rate of interest and the legal costs, including the attorneys fee prescribed by law. Our statutes limit the interest to six per cent., fix the costs in court and prescribe the amount to be included as an attorneys fee. Nothing more can be obtained by force of the law. At the common law costs or expenses of recovering a debt were not allowed at all, and they were never allowed *eo nomine*. In actions for damages, some sort of compensation for trouble or expense was included in the verdict. 3 Bl. Com. 399; 4 Minor's Inst. 699; *Wilkinson* v. *Hoke*, 39 W. Va., 403; *Roberts* v. *Paull*, 50 W. Va., 531; *West* v. *Ferguson*, 16 Gratt. 270. Whether inability to obtain relief from this defect by contract may be inferred from the resort to the legislature for enabling statutes, it is unnecessary to inquire. It suffices to say the legislature passed laws dealing fully and comprehensively with the subject and presumptively made what was deemed an adequate provision, wherefore, under a well settled rule of construction, it is not in the power of the courts, by their judgments, or private persons, by their contracts,

to extend or broaden it. If it be conceded that there was common law on the subject, these statutes necessarily repealed it by implication. By them, the Parliament in England substituted a system of statutory law for the common law, as to costs, covering the whole subject and omitting any supposed right to recover them by virtue of a stipulation in the contract; and that statutory system, as revised and extended by our legislature, still omits it, and has actually provided against it.

"Whenever a statute undertakes to provide for a specific matter or thing already covered by a common-law rule, omissions in its provisions of certain portions of the rule may be taken as indicative of a legislative intent to repeal or abrogate the same. And this, though in all other respects the statute and common law are in exact conformity." *In re Lord and Polk Chem. Co.,* 7 Del. Shy. 248. To the same general effect see, *Com.* v. *Cooley,* 10 Pick. (Mass,) 37; *Pearce* v. *Atwood,* 13 Mass. 324; *Com.* v. *Dennis,* 105 Mass. 162. On this principle, the Supreme Court of the United States held that wager of law, if it ever existed in this country as a mode of trial, had been abolished. *Childress* v. *Emory,* 8 Wheat. 642. See also 8 Cyc. 376, citing numerous other cases. Having specified what may be recovered, whether the common law would have permitted more or not, by its prescription of rules, the legislature has impliedly negatived any supposed right to obtain anything in addition thereto. The detri ment to the payee or holder, resulting from default in payment, is compensated as fully as the legislature intended it to be, by the costs and fees prescribed by the statute, wherefore there can be no consideration for the promise, even in the sense of detriment.

Viewed as a contract of indemnity, the stipulation fails on the same principle. It is indemnity against what a debtor, unable or unwilling to pay, has a legal right to do, avail himself of the delay in payment, accorded him by law, subjecting himself to the incidental punishment inflicted in the form of costs and fees prescribed, and recoverable. This legal, though not moral, right in the debtor precludes the existence of any consideration for the contract as one of indemnity, and the agreement amounts to no more than one to bear the

burden imposed by law upon the person in whose favor it is made, an agreement to give something for nothing. For reasons of public policy, the legislature has, in effect, declared that the lender or creditor shall take the risk of expense of collection in excess of the allowance it has made by way of indemnity or reimbursement. It has not left the matter in the hands of the parties to be provided for by agreement. It has acted upon the subject itself and declared its will, for the same reason that impelled it to act upon the subject of interest, to the end there should be no open door to oppression and undue advantages, attended by constant temptation to money lenders, to violate the law against usury, and, and on the part of collectors, to encourage litigation and inflict unnecessary costs and expenses amounting, in an economic sense, to waste and loss. It would encourage the employment of collectors and attorneys and be an inducement to attorneys to seek claims for collection and institute actions unnecessarily. In this connection, the following observations of Woods, judge, in *Ohio* v. *Taylor,* 10 O. 378, are apropos: "What may be supposed as the natural result to the community from the execution of this agreement? It would be the condition of future loans, at banks, that the borrower should pay the expense of collection, and perhaps, the tax thereon. The brokers in this state would hold a general jubilee: and as their sense of morality and law usually expands with their hopes of gain, in proportion to the borrower's necessity, they would find probably, additional items of costs, as a means of legalized extortion upon their loans." In *Witherspoon* v. *Musselman,* 14 Bush. (Ky.) 214, the court held as follows: "Agreement to pay a reasonable attorney's fee, in the body of a promissory note, if it is 'collected by suit,' is absolutely void—it is contrary to the policy of our laws—it is an agreement to pay a penalty, tends to the oppression of the debtor, and to encourage litigation."

The decisions upholding such contracts themselves disclose the abuses indicated. Some of them inquire only as to whether the stipulated amount is reasonable. This permits the holder of the paper to take as profit on the transaction all he can save out of the amount recovered, and it amounts to additional interest. *Wood* v. *Winship Machine Co.,* 83 Ala. 424;

*Toler* v. *Keiher*, 81 Ind. 383; *Bank* v. *Gay,* 114 Mo. 203; *Bank* v. *Larsen*, 60 Wis. 206; *Bank* v. *Tuttle*, 5 N. M. 427; *Morgan* v. *Kiser*, 105 Ga. 104; *Alaxander* v. *McDow*, 108, Col. 25. In others an effort is made to avoid this result by treating the contract as one of indemnity and allowing only the actual expense. *Bank* v. *Robinson*, (Tex.) 135 S. W. 372; *Dunavant* v. *Stafford*, 36 (Tex.) Civ. App. 33. These decisions disclose a futile effort on the part of the courts to prevent abuse of it. As the matter is all in the hands of the creditor and his attorney, neither the debtor nor the court can know what fees are actually paid.

It is hardly necessary to say the legislature has ample power to forbid such contracts, in view of the evils they carry or of which they are, to say the least, susceptible, for nobody is likely to dispute it. Hence, the inquiry is one of legislative intent only, and that seems perfectly clear, when the statutes are considered in the light of the rules of interpretation. Indeed, the non-recognition of such an oppressive and evil working contract reflects credit upon the common law itself. In those courts which recognize it, liberty of contract and increased efficiency of negotiable paper as an instrumentality of commerce are the principal grounds of justification. The statutes marking out inhibitive public policy are seldom mentioned and never fully analyzed. The inquiry goes only to the question of usury. No effort is made to escape the common law inhibition of costs or the limitation of statutory costs—both of which are more directly applicable than the usury statute. If these statutes have the scope and effect here claimed, there is no such liberty of contract, and however beneficial these contracts may be in commerce, it is the province of the legislature, not the courts, to legalize them, and the courts have no power to do so, in the face of a clearly manifested public policy condemning them.

Through all the refinements in argument upon which validity of this sort of an agreement is predicated, the reader feels the weight of conviction that the real inducement to the stipulation is the loan of the money, not any wish or desire on the part of the borrower to relieve the lender of any burden. It is inseparably connected with the loan, and can have no separate or distinct existence. It is entered into to

obtain the loan and for no other purpose. That being the intent of the borrower, concurred in by the lender, it is difficult to see how, in point of intent and purpose, there can be any other consideration. As legally there can be no other, the indemnity is a mere benefit to the lender in addition to the interest for which the law permits him to contract.

In opposition to the conclusion here indicated and the reasoning upon which it is predicated, certain early Virginia decisions are relied upon, one of which, *Campbell* v. *Shields,* 6 Leigh. 517, holding a bond, given for a past due debt and including a sum equal to 5 per cent. of the debt, to cover commissions which the creditor might be compelled to pay to an agent for collection, not to be usurious, apparently conflicts with it to some extent. In the opinion, Judge Carr declared it lawful to charge a reasonable commission for trouble and expense. The defense was usury and had for its purpose the defeat of the entire debt, under the statute forfeiting the whole debt for the offense of usury. As the statute was so highly penal, it was perfectly natural for the court to struggle against the establishment of the offense and to that end, give the statute a strict construction, under the rule requiring it in the case of a penal statute. No reference was made to the statute limiting costs, and much stress was laid upon the question of intent. Our statute against usury is not penal. Forfeiting only the interest in excess of the legal rate, it is purely remedial and falls under the rule of liberal construction. Had Judge Carr been deciding the case under it, his opinion might, and likely would, have pursued an entirely different course and led to an opposite conclusion. He founded his conclusion in part on *Stratton* v. *Assurance Co.,* 6 Rand. 22, involving the collection of a penalty of 7½ per cent. imposed upon a delinquent member of a fire insurance society, by one of its by-laws. Of course there was no semblance of usury in that, for there was no loan of money, nor any debt other than that incident to membership in the society, which included the percentage for delinquency. *Greenhow* v. *Buck,* 5 Munf. 263, was a case of the same kind. In *Pollard* v. *Baylor,* 6 Munf. 433, there was involved a commission on a contract for the sale of tobacco, which contract, the court said, the debtor could make with the creditor as

well as others, and, besides, as in the case of *Campbell* v. *Shields,* the debt had been previously made and was free from the suspicion of usury when made, and the court said a debt, valid in its inception, could not be vitiated by a subsequent usurious transaction. In neither case, was the question at issue the collection of the commission. In *Pollard* v. *Baylor,* the purpose of the plea was to invalidate a deed in an action of ejectment, and, in the other, to escape payment of the whole debt, and the commissions were only collaterally involved by efforts to accomplish vastly larger purposes than relief from the commission contracts.

The Virginia court has not acknowledged these decisions as binding it in the disposition of the question here presented. In its later decisions, it has uniformly held stipulations for expenses of collection void as being inhibited by public policy. *Fields* v. *Fields,* 105 Va. 714; *Rixey* v. *Pearre Bros.,* 89 Va. 113; *Ronald* v. *Bank,* 90 Va. 813. Moreover ,the principle here declared was enunciaed and applied in *Toole* v. *Stephen,* 4 Leigh, 581. There a note given by a debtor to the attorney of a bank for part of his commission for reducing its claim to judgment was declared usurious. This commission differed from those involved in *Pollard* v. *Baylor* and *Campbell* v. *Shields* in this only, that it had been earned, while the others had not. It was not payable to the creditor, but to the attorney who had rendered the service. Nevertheless the court refused enforcement of the contract to pay it. This was, in substance and effect, a declaration of want of consideration. Had the commissions only been involved in the other two cases, they would probably have met a like fate. *Oglesby* v. *Bank,* 77 S. E. 468, decided by the Virginia court, involves no departure from the law as declared in *Rixey* v. *Pearre Bros.,* and other later cases. It upheld the stipulation under the laws of New York, holding the contract to be governed in respect of its performance by the laws of New York. The last point of the syllabus reads: ''A contract valid at the place of performance, another state, will be enforced in Virginia, though a similar contract made and to be performed in Virginia would not be upheld.''

In this state, as has been indicated, the law upon the subject has been regarded as settled beyond question or doubt.

Our decisions do not disclose a single case in which recovery has been sought on such an agreement. No effort has ever been made here to establish its validity. In all the states in which it has been upheld, the reports abound with decisions involving such contracts. In the reports of the courts of other states in which it is condemned, appear many instances of effort to legalize it, as in Michigan, North Carolina, Arkansas and Virginia. A thorough and general conviction on the part of members of the profession against its validity has restrained them from presenting the question, and foundation for this impression appears in the judicial declaration of invalidity of contracts, not usurious at all, but tending to usury, and because they have such tendency. A contract for compound interest is declared to be void and unenforcible because of such tendency, although it is admittedly not usurious in law or fact. In *Childers* v. *Deane,* 4 Rand. 408, Judge Carr said: "But an agreement made at the time of the loan, that at the end of the year interest shall become principal, will not be allowed; not that it is usury and will render the contract illegal and void; but because the chancery considers it hard and oppressive and tending to usury." So this court has uniformly held. *Genin* v. *Ingersoll,* 11 W. Va., 549; *Hurst's Adm'r.* v. *Hite,* 20 W. Va. 183; *Boggess* v. *Goff,* 47 W. Va. 139. Here is an instance in which a contract not forbidden by any statute is held void because of its mere tendency to usury and liberty of contract, accorded by the common law, denied and restrained by the public policy of the state. On the same principle, the uniformly admitted usurious tendency of the stipulation for attorneys' fees, condemns it, although, in the absence of a defined public policy, it seems to fall within the power of individuals to make contracts.

The negotiable instruments law, ch. 81 Acts of 1907, ch. 98 A of the Code, has not altered this policy. Negotiability of paper is one thing, and the policy of the state as to usury and other oppressive practices quite another, and that statute deals with the former not the latter. It says not a word about usury. Its purpose was to establish uniformity in the quality, characteristics and incidents of negotiable paper and to extend the principle of negotiability, but it assumed

the validity of the paper contemplated. In other words, it assumed the paper to be such as the law permits the parties to make and allows the courts to enforce. No rule or principle of construction justifies the courts in saying its very general terms repeal positive statutes relating to subjects other than negotiability of valid paper. On the contrary, the rules of construction forbid it. *Reeves* v. *Ross,* 62 W. Va. 7; *Conley and Avis* v. *Coal & Coke Ry. Co.,* 67 W. Va. 129; 36 Cyc. 1146; 26 Am. & Eng. Ency. L. 640; Lewis' Southerland, Statutory Con., sec. 274, old Ed. 157.

The trial court erroneously included the commission in its judgment. It likewise erred in the refusal of credit for usurious interest paid to the bank amounting to $39.66. As credit for this item was claimed in the pleadings no principle upon which it could be disallowed is perceived. Deduction of these two items from the amount of the judgment rendered leaves $2270.22, as the amount for which it should have been rendered.

The judgment will be reversed and judgment entered here for said sum, as of the 4th day of September 1912, with interest thereon from that date until paid and costs in the court below. Costs in this court will be adjudged to the plaintiff in error.

*Reversed and Entered.*

MILLER, PRESIDENT, (*dissenting*)

I am of opinion not to concur. Concededly the opinion is against the great weight of authority, including the leading case of *Campbell* v. *Shields,* 6 Leigh 517, a case directly in point, and other Virginia cases antedating the separation of the states, and as many times decided binding on us. The decision in *Campbell* v. *Shields,* was reached after the question involved had been a long time controverted in Virginia, and so far as I have found it was never thereafter questioned, until *Rixey, Trustee* v. *Pearre Bros. & Co.,* 89 Va. 113, which makes no reference to the prior Virginia decisions, and refers only to the Michigan case of *Bullock* v. *Taylor,* 39 Mich. 137.

Mr. Daniel has apparently with great care, in the last edition of his work on Negotiable Instruments, volume 1, sections 62 and 62a, collated in the notes to these sections all

the decisions of the different states covering the subject, and it is only necessary to refer thereto to learn how overwhelming the decisions of the various states are against the position taken in the opinion. As a general rule these opinions are uninfluenced by statute, and like the early Virginia cases are merely declaratory of the general law. Most of them sustain not only the validity of such stipulations, but likewise the negotiability of the instrument. Many uphold the validity of the stipulations, while denying the negotiability of the instrument. A few hold the stipulations penal and void; and one or two cases, including the Ohio case of *Shelton* v. *Gill*, 11 Ohio 417, hold them usurious and subject to the statutes against usury. In III Minor's Inst., part 1, page 311, this great expounder of the Virginia law, referring among others to the case of *Campbell* v. *Shields*, places contracts or stipulations for collection expenses along with brokerage contracts, and holds such contracts not usurious. He says it is not usury for a creditor who gives indulgence to his debtor to include the commission which he would have to pay an agent for collecting the debt for him.

The reason given in the opinion for going against the Virginia cases binding us, and against this great weight of authority, is that such stipulations tend to usury, oppression, and to the encouragement of litigation. I do not see how this is so in theory or in fact. If such was the fact it seems remarkable that so many of the great commercial states of the country continue to deny the usurious character of such stipulations, and to hold them collateral, and enforceable not necessarily to the full amount stipulated, but only for reasonable attorney's fees and collection expenses, not exceeding the sum stipulated. Such construction robs them not only of the taint of usury, but also of any danger from oppression or the encouragement of litigation. *Campbell* v. *Shields*, and other Virginia cases, would so construe them. A creditor bound to collect his debt by law would not stop short of enforcing his rights by legal action, because of the expense he would incur in the litigation.

In reply to the suggestion that such contracts are usurious Mr. Daniel says: "Such stipulations do not, we think, render such instruments usurious. The additional amounts are in

consideration of additional trouble and expense inflicted on the holder, and not excessive interest for the loan or forbearance of money." True the more recent Virginia decisions, referred to in the opinion, tend to unsettle the law of that state, but those decisions are not binding on and should not disturb us. While *Oglesby Co.* v. *Bank*, (Va.) 77 S. E. 468, the most recent Virginia case, involved a New York contract, and for that reason may not be exactly in point, nevertheless it criticizes *Rixey* v. *Pearre Bros. & Co.*, and *Fields* v. *Fields*, 105 Va. 714, 54 S. E. 888, and approves the earlier Virginia cases, including *Campbell* v. *Shields*, and the inference to be drawn from the argument is a purpose to adhere to the principles of the earlier cases. Reference is made in the opinion to *Toole* v. *Stephen*, 4 Leigh 581, as being opposed to *Campbell* v. *Shields*, but it is not. Quite the contrary. The distinction noted between the two cases is important. In the Toole-Stephen Case the promise was absolute to pay judgments recovered by the creditor with costs and attorney's fees, as the opinion concedes, already incurred. The promise held usurious was unconditional. There was no way for the debtor to escape payment. This is the exact point of distinction, and the reason why in the one case the promise was held usurious, and in the other not so. *Pollard* v. *Baylors*, 6 Munf. 433, Anno., and the cases cited in the note make this distinction very plain. The first point of the syllabus in that case is: "A penalty, inserted in a contract, from which the party may deliver himself, does not make such contract usurious." And in the second point of the syllabus it is said: "The question whether a contract is usurious, or not, is to be decided with reference to the time when it was entered into; for a contract legal at such time, can not be made usurious by subsequent events." In *Ward* v. *Cornett*, 91 Va. 681, it was decided that, where a debtor by punctual payment of the debt may relieve himself and avoid the payment of the illegal interest stipulated for it is not usury.

I do not see how it can be said that we have any policy in this state against this character of contracts. Prior to the recent Virginia cases I do not think any lawyer would have hesitated, on looking to the Virginia decisions, binding us, and to Mr. Minor's statement of the law on the subject, and

seeing the great weight of authority supporting these early Virginia cases, to advise his client that such contracts were enforceable in Virginia and in this state. One of the strong reasons noted by Mr. Daniel, given or implied in the many cases upholding the validity of such stipulations and the negotiability of the instrument containing them, is, that being an indemnity by the maker against the consequence of his own act or default, they are entirely consonant with public policy because they add to the value of the paper, and tend to lower the rate of interest and discount, and as these decisions say, how can contracts of this character be against public policy when the debtor may avoid their effect by prompt payment or payment before suit? To hold otherwise is to unduly hamper commerce and the freedom of contracts. In this day and age the business of the usurer has become unprofitable. Money, as a general rule, is plentiful and seeking investment at legal rates, and below legal rate in many instances, and the chances for hard bargains are few. A borrower does not have to submit to hard bargains these days. But why should it be thought a hardship or oppressive for him who has laid by a few dollars for old age, and on the income of which he depends for his existence, to bargain with the borrower that if he fails to pay the debt and interest, as agreed, he and not the lender shall bear the burden and expense of collection? All loans are not of this character, it is true. But even the banks are engaged in loaning the money of the people entrusted to them and who depend on their earnings for daily support, and the principle is the same.

The hundred years and more of judicial history in this country, and where these contracts have been upheld, has failed to develop the evils portended in the opinion. The uniform negotiable instruments law adopted in this state and in most of the other states recognizes the validity of such contracts, and specifically provides that they shall not render instruments uncertain or destroy their negotiability. It seems to me these laws are entitled to some consideration in this connection. The reason noted in some of the decisions why instruments bearing such stipulations are not rendered uncertain and nonnegotiable is that they in no way affect the sum certain to be paid at maturity, the obligation of the con-

tract maturing subsequently to the date of maturity of the instrument.

The opinion I think finds no support in *Genin* v. *Ingersoll,* 11 W. Va. 459, *Hurst, Admr.* v. *Hite,* 20 W. Va. 183, and *Boggess* v. *Goff,* 47 W. Va. 139. Those cases as I interpret them do no more than declare the rules applicable to partial payments with respect to the question of compounding interest. The Boggess-Goff Case would justify a new contract to pay interest on interest after interest has become due without such new contract being affected by usury.

But it is unnecessary in a dissenting opinion already too extended to further elaborate the questions discussed. I would affirm the judgment, and Judge WILLIAMS, I am authorized to say, concurs with me in this dissent.