MAY *et al., Appellants,* v. CRAWFORD *et al.*

Division One, January 29, 1898.

1. **Breach of Contract:** TRIVIAL MATTERS. Parties to a contract can not stipulate for an absolute sum for a breach of some immaterial or trivial part thereof.

May v. Crawford.

2. ——: ——: PENALTY: LIQUIDATED DAMAGES. Damages, called by the parties in their contract "liquidated," have by the American courts been pronounced a penalty, and held not recoverable as such. And sometimes an express stipulation for a penalty has been held to give right to damages in the sum named.

3. ——: RECOVERY OF SUM STIPULATED AS LIQUIDATED DAMAGES. In this case the contract, under which one mercantile firm called the "Famous" sold to another a part of its stock of goods, stipulated, "in the penal sum of $5,000" "as liquidated damages, in lieu of all other damages," that the purchasing firm would not advertise the goods as the "Famous stock" any further than to include the goods actually sold. *Held,* that this contract fixed the compensation the selling firm should receive, because of such breach of the contract, at $5,000.

*Appeal from St. Louis City Circuit Court.*—HON. L. B. VALLIANT, Judge.

REVERSED AND REMANDED.

*Nathan Frank* and *Seymour D. Thompson* for appellants.

(1)  By the language used in the contract with reference to the damages which should be paid for a breach of this stipulation as to the character of the advertising, the parties intended, in the event of a wholesale breach of the agreement, such as the defendants have committed, to liquidate the damages which should be paid, and to relieve the plaintiff from the necessity of proving actual damages. The parties have used language from which the conclusion is unavoidable that they did not intend a penalty but intended liquidated damages. The damages inflicted upon the plaintiffs from a breach of the agreement by the defendants, though manifestly large, are in their nature incapable of measurement, assessment or estimation—a controlling principle in the interpretation of such contracts. *Cochran v. Railroad*, 113 Mo. 360; *Morse v. Rathburn*, 42 Mo. 594; *Burk v. Dunn*, 55 Ill.

App. 25; *Sanders v. Carter*, 91 Ga. 450; *Wallis Iron Works v. Monmouth Park Ass'n*, 55 N. J. L. 132; *Chase v. Allen*, 13 Gray (Mass.), 42; *Mott v. Mott*, 11 Barb. (N. Y.) 127; *McPherson v. Robertson*, 82 Ala. 462; *Pierce v. Jung*, 10 Wis. 30; *Powell v. Burroughs*, 54 Pa. St. 329; *Kemble v. Farren*, 6 Bing. 141; *Kelso v. Reed*, 145 Pa. St. 606; *Ward v. Railroad*, 125 N. Y. 230; *Fasler v. Beard*, 39 Minn. 32; *Brennan v. Clark*, 29 Neb. 385, 393; *Cushing v. Drew*, 97 Mass. 445; *Tingley v. Cutler*, 7 Conn. 291; *Williams v. Green*, 14 Ark. 328; *Durst v. Swift*, 11 Tex. 282; *Studabaker v. White*, 31 Ind. 215; *Reilly v. Jones*, 1 Bing. 302; *Westerman v. Means*, 12 Pa. St. 97; *Downey v. Beach*, 78 Ill. 53; *Dwinel v. Brown*, 54 Me. 468; *Atkins v. Kinnier*, 4 Ex. 776; *Sainter v. Ferguson*, 7 C. B. (M. G. & S.) 730; *Dennis v. Cummins*, 3 Johns. Cas. 298; *Hasbrouck v. Tappe*, 15 Johns. (N. Y.) 200; *Curtis v. Brewer*, 17 Pick. (Mass.) 513; *Bright v. Rowland*, 3 How. (Miss.) 398; *Lightner v. Menzel*, 35 Cal. 452; *Leary v. Laflin*, 101 Mass. 334; *Allen v. Brazier*, 2 Bailey (S. C.), 293; *Craig v. Dillon*, 6 U. C. App. (Ont.) 116; *McPhee v. Wilson*, 25 U. C. Q. B. 169; *Archbold v. Wilson*, 32 U. C. Q. B. 590; *Hamilton v. Moore*, 33 U. C. Q. B. 100; *Hoagland v. Segur*, 38 N. J. L. 239.   (2)  The damages stipulated for in the contract are not shown to be disproportionate to the injury inflicted by the defendants on the plaintiffs in thus breaking the agreement. *Morse v. Rathburn*, 42 Mo. 594; *Cochran v. Railroad*, 113 Mo. 360; *Sanford v. Bank*, 63 N. W. Rep. (Iowa) 459.   (3)  The use of the words "penalty" and "penal sum" is not important.   *Moore v. Platte Co.*, 8 Mo. 467; *Morse v. Rathburn*, 42 Mo. 594; *Cochran v. Railroad*, 113 Mo. 362; *Tilley v. American Building, Etc., Ass'n*, 52 Fed. Rep. 618; *Davies v. Penton*, 6 Barn. & Cres. 224; *Sainter v. Ferguson*, 7 C. B. 716; *Dakin v. Williams*, 17 Wend. 448; *Streeter v. Rush*, 25 Cal. 67,

71.   (4)   This is not a case for the application of the
rule that where the agreement is to do several things,
some of them unimportant or all of them possessing
varying degrees of importance, or in respect of some
of which there is a fixed and known measure of dam-
ages, the sum agreed upon will be regarded as a pen-
alty and not as liquidated damages.   *Hammer v.
Breidenbach*, 31 Mo. 52; *Mercer v. Irving*, 27 L. J.
(Q. B.) 291; *Law v. Local Board* (1891) 1 Q. B. 127
C. A.; *Catton v. Bennett*, 51 L. T. 70.   (5)   The parties
had the right to make their own contract; the legis-
lature could not have deprived them of that right, and
the courts ought not to, the contract being fair.   *State
v. Loomis*, 115 Mo. 319; *Commonwealth v. Perry*, 155
Mass. 117; *Godcharles v. Wigeman*, 113 Pa. St. 431;
*Ctate v. Goodwill*, 33 W. Va. 179; *State v. Coal & Coke
So.*, 33 W. Va. 188; *Millett v. People*, 117 Ill. 294.   (6)
What the defendants agreed not to do, and what they
did do, was a malicious tort; and the courts will not
relieve a party against the lawful consequences of such
an act.   (7)   Unless the plaintiffs have a remedy in
this action, they have no remedy at all for a grievous
and malicious wrong, presumptively inflicting large
damages upon them.

*W. B. Homer* for respondents.

(1)   The defendants committed no breach of the
contract.   (2)   The covenant of the contract sued
upon provides for a penalty, and not for liquidated
damages.   (3)   It may be stated as a general rule of
application that a stipulation for the payment of a
specified sum, on the breach of a contract, in which it
is contained, is to be treated as a penalty rather than
as liquidated damages, if the intention of the parties
as to its effect appears to be at all doubtful, or is of
equivocal interpretation.   *Moore v. Platt Co.*, 8 Mo.

473; *Tinkham v. Satori*, 44 Mo. App. 663; *Wilson v. Mayor of Baltimore, Etc.*, 34 Atl. Rep. 775; *Smith v. Wedgewrite*, 74 Me. 460; *Goodyear v. Selz*, 157 Ill. 191; *Burrell v. Daggett*, 77 Me. 545; *Smith v. Wainwright*, 24 Vt. 97; *Lansing v. Dodd*, 45 N. J. L. 525. (4) The burden of proof will be on him who claims that a provision, for the payment of a specified sum, is liquidated damages, to show that it was intended as such by the parties. 2 Greenl. on Ev. [Lewis' Ed. 1896], sec. 257; *Tinkham v. Satori*, 44 Mo. App. 664; *Keck v. Bieber*, 148 Pa. St. 646; *Smith v. Wainwright*, 24 Vt. 297; *March v. Allabough*, 103 Pa. St. 342; *Shute v. Taylor*, 5 Met. (Mass.) 67; *Wilson v. Baltimore*, 34 Atl. Rep. 775. (5) When the word "penalty" is used in a bond or contract, it is generally conclusive against the amount therein stated being held liquidated damages, however strong the language of the other parts of the instrument in favor of such construction may be. *Hammer v. Breidenbach*, 31 Mo. 52; *Bayse v. Ambrose*, 28 Mo. 39; *Taylor v. Sandiford*, 7 Wheat. 13; *Bagley v. Peddie*, 16 N. Y. 469; *March v. Allabough*, 103 Pa. St. 342; *Smith v. Dickeson*, 3 B. & P. 330; *Wilkinson v. Colley*, 164 Pa. St. 41; *Smith v. Brown*, 164 Mass. 584. (6) Where there are a variety of provisions in a contract, and a certain sum is stipulated to be paid upon the violation of any and all of such provisions, or where a slight deviation from the contract is visited with the same amount of damage as a breach of the whole or the most important terms of the contract, such sum is regarded as a penalty. *Gower v. Saltmarsh*, 11 Mo. 271; *Hathaway v. Lynn*, 75 Wis. 186; *Wilkinson v. Colley*, 164 Pa. St. 41; *Bigony v. Tyson*, 75 Pa. St. 157. (7) In a case where the plaintiff can show no damage or only nominal damages, the amount stated will be treated as a penalty. *Hathaway v. Lynn*, 75 Wis. 186; *Rayner v. Condor*

(1895) 2 Q. B. L. R. 289; *Quinn v. United States*, 99 U. S. 30; *Eva v. McMahon*, 77 Cal. 467; *Bignall v. Gould*, 119 U. S. 498. (8) The last two provisions of the contract being conceded to be penalties, the one sued upon will also have to be so interpreted. *March v. Allabaugh*, 103 Pa. St. 342; *Lansing v. Dodd*, 45 N. J. L. 526; *Holdeman v. Jennings*, 14 Ark. 333. (9) The amount of $5,000 "was unreasonable and out of proportion to the probable damage," and is therefore a penalty. *Cochran v. Railroad*, 113 Mo. 363; *Hanaker v. Schoers*, 49 Mo. 408; *Morse v. Rathburn*, 42 Mo. 594; *March v. Allabough*, 103 Pa. St. 335; *Wilkinson v. Colley*, 164 Pa. St. 41.

BARCLAY, P. J.—This action was brought to recover $5,000 damages for alleged breach of a contract. The plaintiffs are the firm of D. May & Company who carry on the mercantile establishment in St. Louis, generally known by the name of "*Famous.*" The defendants, D. Crawford & Company, have a large department store on the same street as plaintiffs and nearly opposite to plaintiffs' store.

In January, 1894, both of the firms were operating these large stores when the contract in suit was made between them for the purposes expressed in it. The price which defendants paid for the goods they acquired under the agreement was about $46,000. The plaintiffs still retained a large stock, amounting to the cost value of over $350,000, and were competitors of defendants in various lines of retail trade. The goods sold by plaintiffs to defendants consisted of black and colored dress goods, silks, satins, velvets, plushes, linens, white goods, domestics, woolens, cotton goods, lace curtains, draperies, portieres, upholstery, blankets, comfortables, lap robes, linings, notions, leather goods (except boots and shoes), art needlework, fancy goods,

jewelry, perfumes, soaps, toilet articles, kid gloves, fabric gloves, silk mittens, woolen mittens, dress trimmings, mohair goods, silk braids, buttons, buckles, laces, embroideries, handkerchiefs, veilings, ruchings, ladies' neckwear, muslin underwear, corsets, lace caps, silk caps, infants' wear, sewing machines, and various et ceteras of a similar kind, kept in the departments into which these various goods had been distributed. The goods retained by the plaintiffs, in the store called "Famous," after making this sale to the defendants, consisted of the clothing, the house furnishing goods, the china and crockery, the men's furnishing goods, and hats, caps, trunks, and valises. They sold to the defendants all the goods in the departments above described, and went out of business so far as those lines were concerned, but continued business in their departments containing the goods last enumerated. After this sale the plaintiffs ceased to be competitors with the defendants, in respect of the goods so sold to them, but continued to be competitors in respect of the goods retained by themselves.

The principal parts of the contract are as follows, after a recital of agreement by plaintiffs to sell to defendants certain goods, etc., "which D. May & Company have on hand in their store at the close of business on the ninth day of January, 1894, situated in the building of the Famous Shoe & Clothing Co., on the northwest corner of Broadway and Morgan street, in the city of St. Louis, viz.: black and colored dress goods kept and sold in department $F$; silks, satins, velvets and plushes, kept and sold in department $G$; linens and white goods, kept and sold in department $H$; domestics, woolen, cotton goods, etc., kept and sold in department $I$; lace curtains, draperies, portieres, upholstery, blankets, comfortables, laprobes, etc., kept and sold in department $J$; linings kept and sold in

department *K;* notions, leather goods, art needle-work, fancy goods, jewelry, perfumes, soaps, toilet articles, etc., kept and sold in department *N;* kid gloves, fabric gloves, silk mittens, woolen mittens, etc., kept and sold in department *O;* dress trimmings, mohair, silk braids, buttons, buckles, etc., kept and sold in department *P;* laces, embroideries, etc., kept and sold in department *Q;* handkerchiefs, veilings, ruchings, ladies' neckwear, etc., kept and sold in department *R;* muslin underwear, corsets, lace and silk caps, infants' wear, sewing machines, etc., kept and sold in department *S*. It being the intention of said D. May & Company in selling, and said D. Craw-ford & Company in buying, the merchandise in the aforementioned departments, that said transfer of mer-chandise shall include any and all other articles kept and sold by said D. May & Co. in said depart-ments not heretofore particularly and individually mentioned." Then follows a statement of the method by which the value of the goods shall be arrived at, and then the contract proceeds, beginning a paragraph, as follows:

"The receipt of five thousand ($5,000) dollars is by these presents acknowledged by D. May & Co. from said D. Crawford & Co., as a part payment on the pur-chase price of said merchandise hereinabove enumer-ated; it being understood that the balance that may be found to be due D. May & Co., upon the completion of the invoice by them, shall be paid them in cash, with-out discount or deduction, upon said completed invoice being tendered D. Crawford & Co. and prior to the re-moval of the goods herein sold. It is mutually agreed and understood, as a condition of this sale, that D. Crawford & Co., the purchasers herein, are by these presents restricted and prohibited from in any way, directly or indirectly, by means of the public press,

posters, circulars (mailed or distributed), or by any other public means of any kind or nature whatsoever, from using in their advertisements of the purchase of the above mentioned merchandise, the general term, 'dry goods,' 'house furnishing goods,' 'chinaware,' 'shoes,' 'clothing,' 'shirt waists,' 'cloaks,' 'wraps,' 'suits,' 'furs,' 'fur trimmings,' 'men's and boys' hats and caps,' 'ribbons,' 'millinery,' or anything pertaining thereto. It being distinctly agreed and understood that the said D. Crawford & Co. shall be permitted to advertise no other articles as having been bought by them from the said D. May & Co., or 'Famous,' than those actually sold and delivered to them by D. May & Co., and enumerated as sold and kept in the departments mentioned in the first portion of this agreement. As a penalty to insure the faithful carrying out of this provision of this agreement said D. Crawford & Co., individually and collectively for themselves, their heirs, administrators, successors, and assigns, bind themselves forever in the penal sum of five thousand dollars, lawful money of the United States, to be paid said D. May & Co., as liquidated damages, in lieu of all other damages, for their breach or breaches of the above provision, which said D. May & Co. may be entitled to recover by suit brought in any competent court.

"In order that this agreement pertaining to the purchase and delivery of the merchandise herein enumerated may be faithfully carried out by both of the parties hereto, it is understood and agreed that if the said D. May & Co. shall fail to deliver the said goods, wares and merchandise herein described, to said D. Crawford & Co. at the time and price herein agreed upon, then the said D. May & Co. shall forfeit to the said D. Crawford & Co. the sum of ten thousand dollars, as liquidated damages in lieu of any other dam-

ages under this contract; and in the event that the said
D. Crawford & Co. shall fail to accept the aforesaid
goods, wares and merchandise, at the time they may
be tendered to them after completion of inventory, or
shall fail to pay the amount due as a balance on the
purchase price as agreed upon herein for said goods,
wares and merchandise, then said D. Crawford & Co.
agree, in lieu of all other damages under this agree-
ment, that they will pay to said D. May & Co., as
liquidated damages for their breach or breaches, as in
this section specified, the sum of ten thousand dol-
lars.   It is understood that in the event of the breach
or breaches of this agreement and any failure to pay
the liquidated damages which may be due by either of
said parties hereto, that suit may be instituted in any
competent court to recover the said liquidated dam-
ages."

The particular complaint made by plaintiffs in re-
spect of this contract is thus stated in their petition:

"But that defendants failed to keep the agreement
entered into between plaintiffs and defendants in said
contract, by which defendants were restricted and pro-
hibited therein from in any way, directly or indirectly,
by means of the public press, posters (mailed or dis-
tributed), or by any other public means of any kind or
nature whatsoever, from using in their said advertise-
ments of the purchase of the above merchandise the
general terms, 'dry goods,' 'house furnishing goods,'
'chinaware,' 'shoes,' 'clothing,' 'shirt waists,' 'cloaks,'
'wraps,' 'suits,' 'furs,' 'fur trimmings,' 'men and boys'
hats and caps,' 'ribbons,' 'millinery,' or anything per-
taining thereto, and violated the same. But defendant
failed to keep the agreement set forth in said contract
by which they agreed to advertise no other articles as
having been bought by them from said D. May & Co.,
or 'Famous,' than those actually sold and delivered by

said D. May & Co., and enumerated as sold and kept in the departments mentioned in the first portion of the aforesaid agreement, and violated the same. That said defendants, in total disregard of their agreements with the plaintiffs, made in said contract, advertised, by means of the public press and posters, other articles as having been bought by them from said plaintiffs, or 'Famous,' than those actually sold and delivered to them by said D. May & Co., and used in their advertisements of the merchandise mentioned in said contract, the general terms they were prohibited from using by said contract, by reason whereof defendants became indebted to plaintiffs in the sum of five thousand ($5,000) dollars, to be paid by said defendants to D. May & Co., as liquidated damages as stipulated by the terms of said contract."

In support of this petition the appellants offered in evidence (among other matters) four advertisements published in different St. Louis newspapers. This evidence tends to show that in advertising the property purchased under the contract, the respondents used the words "Famous" and "Famous stock," and in one case the words "dry goods," though not in the description of the goods purchased from the appellants. Plaintiffs also offered in evidence photographs of two signs on the store of respondents in which the words "Famous" is used. But we need not go into the particulars of plaintiffs' testimony as to the breach of that part of the contract which relates to advertising. The learned trial judge found (and we think, correctly) that defendants had broken the agreement "by inserting in the newspapers the advertisements in evidence in the case, and by the posters placed by them on their store" to quote the language of the judge in a declaration of law on that point.

The serious contest in the circuit court was on the

issue whether or not plaintiffs were entitled to recover the sum of $5,000 as declared in the part of the contract referred to.   The court asserted the negative and accordingly instructed as follows:   "The court declares that upon a proper construction of the contract between the plaintiffs and the defendants, given in evidence, and upon which the suit is instituted, the sum of $5,000 mentioned therein is to be construed as a penalty, and not as liquidated damages."  The court further declared that plaintiffs were entitled only to nominal damages. The result of these declarations of law was a finding for plaintiffs for one cent, followed by a judgment for that amount and costs.   Plaintiffs duly appealed, after the usual steps preliminary.

1.   The problem whether or not a stipulation for a fixed sum (as compensation for the breach of a contract) is to be held a penalty or liquidated damages is often one of difficulty, as are many similar problems in the law which require the courts to surmise what parties to a contract intended.  All the cases on this subject agree that the mere language parties have used is to be legally moulded into the form which their intent reveals. Thus cases are to be found in which an express stipulation for a penalty has been held to give a right to damages in the sum named.   Whereas, on the other hand, damages (called by the parties "liquidated") have been frequently pronounced a penalty, and as such not recoverable.   For under the modern common law, especially as interpreted in the United States, parties may not stipulate absolutely for a price for the breach of some immaterial or trivial part of their contract.   Such a stipulation is theoretically against the policy of the law as declared by the courts, which have established a supervision of agreements by a long course of precedents and acquiescence by the people therein.

The touchstone of validity of contracts of the sort before us is found by solving the question whether the amount ostensibly awarded, for the breach complained of, is or is not reasonably appropriate and just, regard being had to the nature of the stipulation for the possible breach of which the agreement provides.

The nature of the contract to be kept is the paramount fact to be grasped in getting at what the parties intended in providing against its violation.

The fact that some of the particulars of the agreement are less weighty than others, is an important consideration in reaching the true intent of the parties, as has been stated in several Missouri decisions; but it is not an absolute guide to that intent any more than is the use in the contract of the bare words "penalty" or "liquidated damages" an infallible index to the meaning of the parties. The true question is whether, in view of the actual breach complained of, the sum nominated in the contract is to be fairly regarded as penalty, or as a fair measure of the real damage in the estimation of the parties most familiar with the probable effects of its breach.

At bar we have a case in which the effect of certain sorts of advertising of retail dealings by a large department store comes in question. The parties determine in advance the bearing that certain advertisements will have on the business of a rival concern, in the very peculiar circumstances indicated by the contract itself. Will anyone contend that the true damage of such advertising as plaintiffs stipulated against is represented by the award of mere nominal damages? Yet what measure of damage could be proven, in the absence of the stipulation? Such injury to the business as might be shown to be the natural and probable consequences of the breach of agreement. But how difficult it is to prove an injury to business, especially from the mere

advertising of a rival concern. The firms involved in the controversy are substantial concerns and their business operations are large. It appears that plaintiffs' stock (remaining after the sale to defendants) is over $350,000 in value. The exact damage plaintiffs will suffer is not susceptible of definite ascertainment, and the amount of compensation fixed by the agreement of the parties is not apparently unreasonable when we consider the general character of the transaction, and the business relations of the parties to each other.

Without elaborating the argument, we are satisfied that the trial court was in error in declaring the law so as to permit only the recovery by plaintiffs of nominal damages, and accordingly the judgment is reversed and the cause remanded for a new trial. MACFARLANE, ROBINSON and BRACE, JJ., concur.