In re DESNOYERS SHOE CO.

UNITED SHOE MACHINERY CO. v. SANGAMON LOAN & TRUST CO.

(Circuit Court of Appeals, Seventh Circuit. August 6, 1915.)

No. 2238.

1. EVIDENCE ☞130—ADMISSIBILITY—CONSTRUCTION OF CONTRACT.

The contractual rights of a creditor against a bankrupt's estate cannot be affected by dealings between the creditor and trustee after the bankruptcy, and evidence of such dealings is inadmissible to establish a practical construction of the contract.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 403; Dec. Dig. ☞130.]

2. CONTRACTS ☞244—EVIDENCE OF MODIFICATION—COURSE OF BUSINESS.

Where machinery was leased to a bankrupt on a royalty basis, the lease providing that the royalty for each calendar month should be paid on the last day of the succeeding month, but that, if paid by the 15th, a discount of 50 per cent. should be allowed, the fact that the lessor in some cases allowed the discount on payments made after the 15th, but before the end of the month, does not evidence a modification of the contract, but only a reduction voluntarily made by the lessor from month to month for payment before maturity, which it was not bound to continue.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 1128; Dec. Dig. ☞244.]

3. USURY ☞32—CONSTRUCTION OF CONTRACT—DISCOUNT OR PENALTY FOR NONPAYMENT—"DUE."

The provision in said lease reads that "the lessee shall pay to the lessor on the last day of each calendar month" a stated sum as rent or royalty, provided that, if the lessee shall pay on or before the 15th "the rent or royalty due" for the preceding month a discount of 50 per cent. "from such rent or royalty due" for the preceding month shall be allowed. *Held* that, in the absence of any evidence outside of the instrument as to the intention of the parties, the word "due," as used therein, should be given its secondary meaning of "owing," instead of its more usual meaning of "owing and now payable," and that, as so construed, the royalty did not become payable until the last day of the month, and the provision for the discount is not one for a penalty for nonpayment, but the discount is an allowance for payment before maturity, and valid (quoting Words and Phrases, Due).

[Ed. Note.—For other cases, see Usury, Cent. Dig. §§ 75–77; Dec. Dig. ☞32.]

Appeal from the District Court of the United States for the Southern Division of the Southern District of Illinois; Arthur L. Sanborn, Judge.

In the matter of the Desnoyers Shoe Company, bankrupt; the Sangamon Loan & Trust Company, trustee. From an order allowing its claim in a reduced amount, the United Shoe Machinery Company appeals. Reversed.

───────────
☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Appellant's claim as a creditor included, as filed, the full amount of royalties due under numerous leases of shoe machinery. It was allowed for only 50 per cent. of the royalties. The lease contained the following provision:

"5. The lessee shall pay to the lessor on the last day of each calendar month as rent or royalty the sum of one (1) cent for each pair of misses' and children's, and one and one-quarter (1¼) cents for each pair of all other kinds, of boots, shoes, or other footwear or portions thereof, lasted or manufactured or prepared during the next preceding calendar month in any way, whether wholly or in part, by the aid of the leased machinery or any part thereof: Provided, however, that in all cases when the lessee shall pay to the lessor on or before the 15th day of the calendar month the rent or royalty due for the use of the leased machinery for the next preceding calendar month, the lessor will in consideration of such prompt payment grant a discount of 50 per cent. from such rent or royalty due for such preceding calendar month."

The petition in bankruptcy was filed July 21, 1911. The bankrupt's bookkeeper from November 1, 1909, testified that for a year preceding bankruptcy it was the custom of the lessor to accept as payment in full 50 per cent. of the royalties when paid after the 15th of the month following that in which they were earned. No testimony as to the practice between November, 1909, and June, 1910, was given, and none as to the dates when payments were made during the year beginning July, 1910, except as shown by bills dated July 1, August 1, September 1, October 1, and December 1, 1910, and February 1, 1911. Each of these bills was for royalties earned during the preceding month, and each of them was paid in full by payment of the 50 per cent. on some day between the 17th and 27th of the month in which they were dated. Testimony that the trustee's net 50 per cent. payment, made October 10, 1911, for royalties earned in August, 1911, was received as payment in full, was also admitted.

The referee held that the net amount represented the real debt, and that the other 50 per cent. was an unlawful penalty. The court confirmed his report, both on this ground and on the further ground that the conduct of the parties evidenced a modification of the leases.

Douglas W. Robert, of St. Louis, Mo., for appellant.

O. S. Humphrey and P. B. Warren, both of Springfield, Ill., for appellees.

Before BAKER, KOHLSAAT, and MACK, Circuit Judges.

MACK, Circuit Judge (after stating the facts as above). [1] 1. The contractual rights of the creditor against the bankrupt's estate cannot be affected by its dealings with the trustee. If the leases were modified, the modification preceded the bankruptcy. The dates when the lessor received payment of royalties earned from the trustee after the bankruptcy and the amounts thereof, whether net or gross, were immaterial. The objection to the proof thereof should have been sustained. The evidence itself must be disregarded.

[2] 2. There is no evidence, either verbal or documentary, that any net payments were made or received after the 27th of the month following that in which they were earned. If, under the contract, the royalties were due and payable only on the last day of the month following the one in which they were earned, then the only modification that, under any circumstances, could be deduced from the course of dealing, is that payments made at any time before maturity of the debt, though not made on or before the 15th day of that month

are entitled to the discount. Such a modification would not affect the present claim.

In our judgment, however, the course of dealing evidenced, not a modification of the agreement, but a reduction by the lessor from month to month of a part of its claim—a reduction made in consideration of the payment before maturity. A course of conduct of this kind might prevent the exercise of a reserved right of forfeiture until due notice had been given that such right would thereafter be strictly enforced. It would not, however, affect the contractual obligation itself. A lessor can allow a discount not provided for in the lease, or contrary to the terms thereof, with or without consideration, for as many successive months as he desires, without thereby obligating himself to continue the allowance for any time thereafter.

[3] 3. The main contention, however, is that the discount provision of the lease is a mere subterfuge for a penalty in excess of legal interest, to be exacted for the failure to pay a debt promptly at maturity. It is urged that, while it is true that suit could not be brought for the royalties earned in one month until on or after the last day of the succeeding month, nevertheless the debt is due as soon as earned; that, therefore, the lowest amount that would discharge the obligation after the due date—that is, the 50 per cent.—is the real amount of the indebtedness. That the debt is due when earned is clear, it is said, from the express language of the lease. It provides for the discount of 50 per cent. of the royalty, not earned, but "due" for the preceding month, if the lessee pay the lessor on or before the 15th day of the calendar month the royalty, again not earned, but "due" for the next preceding calendar month.

The apparent contradiction between the debt being due at the end of one month and suable because payable only at the end of the following month is avoided, and the obvious intention of the parties given full effect, if the word "due" be given its secondary meaning of "owing" (United States v. Bank, 6 Pet. 29, 8 L. Ed. 308; 3 Words and Phrases, p. 2213), instead of its more usual, but in this instance impossible, meaning of "owing and now payable." So interpreted, the lease is perhaps distinguishable from that considered by the court in Goodyear Co. v. Selz, Schwab & Co., 157 Ill. 186, 41 N. E. 625, in which it was held that only the net amount was the real debt; the other 50 per cent. being an unlawful penalty. There the royalties were expressly due and payable, not on the last, but on the first, day of the succeeding month, "and to be paid within one month from that day." The 50 per cent. discount was to be given "if the royalties due on the 1st day of any month shall be paid on or before the 15th day of that month." If, however, the words "to be paid within one month from that day" make the debt payable only a month thereafter, then the case cannot be distinguished.

We are not dealing with a loan of money for the use of which no more than legal interest can lawfully be demanded. Here the parties were empowered to fix the rentals at such sum and payable at such times as they deemed best. Having agreed thereon, they could further provide for any discounts based on payment before maturity. A

provision for discounts far in excess of the lawful interest rate is not only a usual, but an invariable, term in sales at wholesale of most lines and at retail of many lines of merchandise. Their validity is beyond question. If, however, 5 per cent. discount for payment in 10 days or 2 per cent. in 30 days, of a debt due in 60 days, is legal, 50 per cent. discount for payment in 15 days of a debt due in 30 days cannot be held illegal merely because it is a much larger percentage. In both cases, the allowance is in fact, as in law, a discount, not a penalty. The debt itself is what the parties by lawful agreement have declared it to be, the full amount earned and payable at a definite date thereafter. If the contract provided that, unless the debt should be paid at maturity, double the amount should be due and payable 15 days thereafter, the excess would clearly be a penalty for nonpayment at maturity, and, as such, illegal.

While the intent of the parties determines what the actual debt is, and whether the larger amount includes a penalty, or the smaller amount is the result of a discount, that intent is to be found primarily from the language of the contract itself. No evidence of any kind has been introduced tending to show that the parties had in fact agreed upon the smaller amount as the actual rental, and that they, or the lessor, through some monopolistic power or otherwise, caused the real agreement to assume its present form for the purpose of concealing, instead of expressing, the mutual intent. In the absence of any such proof, the court would be substituting the contract that it thought the parties ought to have made for the one in fact made by them, if it held that to be a penalty which the parties, free to contract on any mutually agreeable terms, decided should be a true discount.

We are in complete accord with the Court of Appeals for the Eighth Circuit, which, after careful consideration both of the authorities and the principles involved, reached the same conclusions in respect to an identically similar lease. United Shoe Machinery Co. v. Abbott, 158 Fed. 762, 86 C. C. A. 118.

The order allowing the claim reduced by 50 per cent. of the royalties will be reversed, and the cause remanded, with directions to allow the full amount of the royalty claims.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes