JAMES H. MAYBURY, In Equity *vs.* SPINNEY-MAYBURY COMPANY.

Knox. Opinion April 13, 1923.

*In proceedings for the sequestration and equitable distribution of the assets of a corporation, generally speaking, where there is no statute otherwise controlling, creditors, whose rights accrue while the fund is in the control of the court, may share in the distribution. Claims presented in time and are capable of being made certain within the time fixed by the court should be allowed. Claims which are not then certain should be disallowed. Under "Lease and License Agreement" contracts where it is provided lessee is to pay for repairs necessary to put the machinery in suitable condition to lease, such claims are allowable, but claims for deterioration not allowable in addition. Where contracts provide royalties and rentals to be paid on fixed days, and a less sum if paid earlier, the intent of the parties governs in determining which sum was the actual debt.*

In proceedings for the sequestration and equitable distribution of the assets of a corporation under R. S., 1916, Chap. 81, Secs. 82–86, the statute does not state what claims shall be provable; it does not prescribe procedure further than to fix a minimum period within which claims shall be presented.

It may be stated in a general way that in equity proceedings for winding up the affairs of a corporation and distributing its assets among its creditors, where there is no statute otherwise controlling, those creditors may share in the distribution of the fund, whose rights accrue while the fund is in the control of the court and within a time consistent with an expeditious settlement of the estate.

In such proceedings, claims which when presented within the time limited by the court for their presentation are certain or capable of being made certain

by recognized methods of computation, should be allowed. Claims which are not then certain should be disallowed because they afford no basis for making dividends.

There is no equitable reason why claims which are certain when presented and which are presented in time, should have been certain at some arbitrary anterior period.

Where contracts, known as "Lease and License Agreements" contain agreements to pay for repairs "necessary to put the leased machinery in suitable order and condition to lease to another lessee," and creditor claims and is allowed to prove for the amount of such repairs, additional claims for so-called return charges, described "as partial reimbursement to the lessor for deterioration of the leased machinery, expenses in connection with the installation thereof and instruction of operators," will not be allowed, no claim being made of expense actually incurred by creditor in the installation of the machines or instruction of operators.

The claimant, having proved the actual cost of restoring the machines to their original condition, cannot also prove for the sum estimated to cover deterioration.

Where contracts for use of machinery provide for the payment of certain sums on fixed days, as royalties and rentals, and for the payment of a less sum if payment is made before an earlier day, and denominate the difference between the larger and the smaller sums as a discount, and have been phrased in terms appropriate to that denomination, the court is not precluded from seeking the intent of the parties to ascertain whether the smaller sum was in fact the actual debt, and the larger sum considered as a penalty.

The question is one of construction of the contract, and courts endeavor to learn the real intent of the parties to the contract, and, if that can be ascertained, will be governed by it.

The court is of the opinion that in the contracts in question, the actual rental to be paid by the lessee and collected by the lessor is the smaller amount; that it was not the actual agreement that the lessee should pay the larger sum, and that the latter must be regarded as a penalty.

On report. A bill in equity under which a receiver was appointed for the defendant company, and, in the proceedings, a Special Master was appointed to pass upon claims against the company. Among the claims so presented was that of the United Shoe Machinery Company which was contested at a hearing before the Master, and when the report of the Master came up for acceptance, no objection was made except to his finding upon said claim of the United Shoe Machinery Company, and the matter of that claim was reported to the Law Court upon an agreed statement of facts. Master's report modified by deducting from the amount allowed on the claim of

United Shoe Machinery Company the sums of $1,994.99, and $383.10, fixing said claim at $3,990.89. Decree to be entered accepting the Master's report as modified by the opinion; final decree to be entered upon report of receiver, and final distribution ordered.

The case is very fully stated in the opinion.

*Arthur S. Littlefield,* for Alan L. Bird, Receiver.

*Walter Bates Farr,* for United Shoe Machinery Company.

SITTING: CORNISH, C. J., SPEAR, HANSON, DUNN, MORRILL, DEASY, JJ.

MORRILL, J. The issues here presented to us relate solely to the amount for which United Shoe Machinery Company, hereinafter sometimes called the claimant, may prove its claim against the defendant and share in the distribution of its assets.

Upon a bill filed May 12, 1917, a Receiver of the defendant corporation was appointed on May 19, 1917. The United Shoe Machinery Company had delivered to the defendant, for the equipment of its factory, some fifty-eight machines designed for use in the manufacture of boots and shoes; said machines were in the factory of defendant at Warren when the Receiver was appointed. The contracts under which the defendant used these machines vary in their terms, but all of them contain a clause in substantially the following words: "If the lessee becomes insolvent or bankrupt, or has a receiving order made against him, or makes or executes any bill of sale, deed of trust or assignment for the benefit of his creditors . . . . then and each such case any and all leases or licenses to use machinery then existing between the lessor and the lessee, whether as the result of assignment to the lessor or otherwise, shall at the option of the lessor cease and determine, and the possession of and full right to and control of all machinery the leases or licenses of which are so terminated, shall thereupon revest in the lessor free from all claims and demands whatsoever."

Each contract also contains a clause in some form reserving to the United Shoe Machinery Company the right to terminate the contract upon default by lessee or licensee in the observance of its terms, and that upon termination of the contracts, the lessee or licensee shall forthwith deliver the machinery to the lessor or licensor at its factory, sometimes stated to be in Beverly, Massachusetts, in good order and condition, reasonable wear and tear alone excepted.

On May 22d, 1917, the United Shoe Machinery Company sent to Spinney-Maybury Company a notice reading:—"You are hereby notified that in the exercise of our rights in the premises, we have elected and hereby declare our option to terminate all leases and licenses which have heretofore been granted to you, covering machines belonging to us.  You are hereby notified that the said leases and licenses and all said rights and privileges are hereby terminated, revoked, canceled and annulled," enumerating the various machines covered by the several leases, and demanding that they forthwith be returned to the Machinery Company at Beverly, Massachusetts. It also gave a like notice to the Receiver.

The machinery was afterwards returned to the factory of the claimant at an expense of $81.60 for freight.

On March 9, 1918, a Special Master was appointed to pass upon claims against the defendant company; he allowed claims of the United Shoe Machinery Company as follows:

| | | |
|---|---:|---:|
| Actual repairs charges, | $1,012 71 | |
| Return charges, | 4,192 49 | |
| Royalties and Rentals, | 766 20 | |
| Mdse. account, | 322 82 | |
| Actual freight, etc., | 81 60 | |
| | | $6,375 82 |
| Less credits, | | 6 84 |
| | | $6,368 98 |

The agreed statement of facts under which the case is submitted states:

"All the account except the merchandise and freight paid on return of machinery is disputed.

"The repairs cost of which are given, were not simply those which were required by the machines that they might be in working order, nor those which were necessary, wear and tear excepted, but were such repairs as restored the machines to their original condition, by the replacing of all worn parts and restoring the machine and to all intents and purposes putting the respective machines in the same condition as they were when new.

"The return charges are in addition to these freight and repair items, and are claimed to be justified by the specific provision of the various leases, few of which contracts are precisely alike, in the clauses affecting the repairs and return charges."

REPAIR CHARGES.

This item is claimed under a certain clause contained in seven of the contracts in question, substantially in the following terms in each contract:

"Upon the expiration or termination of this agreement or any extension thereof or of the lease and license herein contained, the lessee shall forthwith deliver the leased machinery to the lessor at Beverly, Massachusetts, in good order, reasonable wear and tear alone excepted, and shall thereupon pay to the lessor without prejudice to any other rights or remedies of the lessor such sum as may be necessary to put the leased machinery in suitable order and condition to lease to another lessee."

Upon this item the master allowed actual repair charges of $1,012.71. We think that this amount was properly allowed. Counsel for the receiver contends that these items arose after the receivership and cannot be a claim against the funds in the hands of the receiver. The adoption of such a doctrine would limit altogether too narrowly the rights of creditors and the procedure in this class of cases. It is true that upon a strict construction of the language of the contracts, if a receiving order is made against the lessee, all leases terminate at the option of the lessor, and upon default by the lessee the lessor shall have the right by notice in writing to the lessee to terminate the contracts; yet the lack of any specific requirement of notice in the one case, or the termination by notice in writing in the other case, affords no ground for distinction in the provability of the repair charges. Some evidence of an election to exercise the option was required and that election the claimant made known by the notice of May 22, 1917, ten days after the bill was filed and three days after the appointment of the receiver. The notice speaks in the present, "said leases and licenses and all said rights and privileges *are* hereby terminated," but the liability to pay, upon termination of the leases, the sum necessary to put the machinery in condition to lease to another lessee, existed at the date the bill was filed. To

exclude from sharing in the assets this debt or liability, the amount of which was determined within the time fixed by the court for presentation of claims, is in our opinion inconsistent with the equitable principles upon which these proceedings should be conducted. It does not matter that the claim was perfected by the act of the claimant, if such must be considered to be the effect of the notice of May 22, 1917; some notice of the election of the lessor to exercise its option was required and was contemplated by the terms of the leases. *William Filene's Sons Company* v. *Weed et als., Receivers,* 245 U. S., 597, 602; 62 L. Ed., 497, 504. The form of the notice was appropriate to evidence an election. In re *Desnoyers Shoe Co.,* 227 Fed., 401, 405.

This bill is filed by a stockholder and officer, who is also a creditor of the defendant corporation, praying for its dissolution and for the equitable distribution of its assets. Jurisdiction in equity for that purpose is given by R. S., 1916, Chap. 81, Secs. 82-88. The statute does not state what claims shall be provable; it does not prescribe procedure further than to fix a minimum period within which claims shall be presented. The corporation may be dissolved; the receiver is to collect and receive all property and assets of the corporation, convert the same into cash, and from time to time distribute them. "The debts of the corporation shall be paid in full, when the funds are sufficient; when not, ratably to those creditors who prove their debts, as the law provides, or as the court directs," any balance is to be distributed among stockholders. (Section 88). The court has jurisdiction in equity of all proceedings, and may make such orders and decrees as equity may require. (Section 87).

It may be stated in a general way that in equity proceedings for winding up the affairs of a corporation and distributing its assets among its creditors, where there is no statute otherwise controlling, those creditors may share in the distribution of the fund, whose rights accrue while the fund is in the control of the court and within a time consistent with an expeditious settlement of the estate. *Pennsylvania Steel Co.* v. *New York City Ry. Co.,* 198 Fed., 721, 738-741. *N. Y. Security & Trust Co.* v. *Lombard Inv. Co.,* 73 Fed., 537. *Woodward Admr.* v. *Wise,* 112 Md., 35, in which it was held that the appointment of receivers for an insolvent corporation does not work its dissolution, in the absence of a judicial declaration to that effect;

nor does it determine the rights of any of the parties concerned. *People* v. *St. Nicholas Bank*, 101 N. Y., 592, distinguishing between a chancery receivership and an assignment for the benefit of creditors whose powers and duties are prescribed by that instrument, as in *Matter of Havener*, 144 N. Y., 271, cited by counsel for the receiver in the instant case. *Karkhoff* v. *Nelson*, 60 Minn., 284, which arose under a statute very similar to the one before us, holding that the procedure as to proof of claims is with the court, which may direct the manner in which claims may be proved, and that "all discussions of what claims may or may not be proved against the estate of an insolvent under bankrupt and insolvency laws, and decisions of courts in cases arising under such laws, are not relevant to the case." *Minneapolis Baseball Co.* v. *City Bank*, 74 Minn., 98. *Spader* v. *Mural Decoration Mfg. Co.*, 47 N. J., Eq., 18; in which it is said: "The receiver is bound in duty and clothed with power to reach out and take in every conceivable asset due or thereafter to accrue to the corporation. A complete collection of assets is contemplated, and a full and final distribution of them is made possible. Such being the situation, natural justice demands that those who suffer from breaches of contract should be included in the distribution, even though the breaches and consequent damages follow the insolvency." *Bolles* v. *Crescent Drug & Chemical Co.*, 53 N. J., Eq., 614. *McGraw* v. *Union Trust Co.*, 135 Mich., 609. *Smith* v. *Goodman*, 149 Ill., 75. *Wilder* v. *McDonald*, 63 Ohio St., 383. In re *Reading Iron Works*, 150 Pa. St., 369.

In the first two cases above cited the question of the provability of claims against the funds of a corporation in the hands of receivers, upon proceedings in equity not controlled by any statute, was exhaustively considered. In *Pennsylvania Steel Co.* v. *New York City Ry. Co.*, 198 Fed., 721, 739, the court says: "The real inquiry in getting at a basis for the distribution of an insolvent estate is whether the claims are reduced to dollars and cents. If they are so reduced or can be so reduced by the application of recognized principles they are entitled to share. If they are not, they cannot share. And this not at all for any reason affecting their merits nor strictly speaking because they are contingent, but because they are uncertain. So, without laying stress upon the question whether claims are (1) past due, (2) immature, or (3) contingent, the real way we should

divide them with respect to the question of provability is into these two classes: (1) Claims of which the worth or amount can be determined by recognized methods of computation at a time consistent with the expeditious settlement of estates.

"(2) Claims which are so uncertain that their worth cannot be so ascertained.

"The second class of claims cannot be proved. They may be highly meritorious, but they cannot share in the estate because their amounts cannot be ascertained.

"The first class of claims ought to be proved and share in the estate and this whether they are overdue accounts, immature notes, or claims for damages for breach of contract coinciding with or following the receivership. It is impossible to point to any equitable ground which would justify a court of equity in excluding the holders of any such claims from sharing in the estate of their debtor."

In the *Lombard Investment Co. Case*, (73 Fed., 537, 544) the court approved the report of a Special Master which formulated a similar rule, but which permitted creditors to prove claims which, although not matured and certain at the time of the appointment of the receivers, became such before *any order of distribution*. In the *New York City Ry. Case*, (198 Fed., 721, 741) the court pointed out that such procedure might give opportunity for uncertainty, delay and expense in reopening and recasting the orders of distribution. We quote again: "A narrower rule can be adopted which would obviate any difficulty in this regard and which would be simple, equitable and workable. It is this: Claims which when presented within the time limited by the court for their presentation, are certain or capable of being made certain by recognized methods of computation, should be allowed. Claims which are not then certain should be disallowed because they afford no basis for making dividends. But there is no equitable reason why claims which are certain when presented, and which are presented in time, should have been certain at some arbitrary anterior period."

These principles and rules of procedure commend themselves to our judgment, and sustain the ruling of the Master. They seem to have received the approval of the Supreme Court of the United States. *Filene's Sons Co.* v. *Weed et als., Receivers*, 245 U. S., 597, 62 L. Ed., 497, 504.

RETURN CHARGES.

These items are claimed to be a debt of Spinney-Maybury Company under the provisions of twelve contracts here under consideration. The master allowed on this claim $4,192.49. The provisions of these contracts relating to return charges vary somewhat, but they may be classified as follows:

(a) Five of these contracts are each entitled "Order and Temporary Loan Agreement" and each contains the following clause:

"Upon the termination of the lease of and license to use said machinery the licensee shall forthwith deliver the said machinery to the United Company at Beverly, Massachusetts, complete and in good order and condition (reasonable wear and tear alone excepted), and shall pay to the United Company the amount set opposite the name of each machine in said column "II," together with the cost at the regular prices established by the United Company therefor of replacing all broken or missing parts. Such payments shall in each case be made by the licensee to the United Company immediately upon such termination, excepting . . . ." (exception not material).

Under these contracts the Master allowed, according to the varying amounts fixed in the five contracts, the sum of $1,155. This must be regarded as properly provable under the rules and principles before set forth in relation to "Repair charges." These contracts do not provide for payment of the sums "necessary to put the leased machinery in suitable order and condition to lease to another lessee," and claim is not made therefor.

(b) The other seven contracts are each entitled "Lease and License Agreement," but vary somewhat in their terms.

Three contain the following clause which is made the basis for the claim for return charges:

"Upon the expiration or termination of this agreement, or any extension thereof, or of the lease and license hereby granted, the lessee, in addition to all other payments in this agreement provided for and without prejudice to any other rights or remedies of the lessor, shall pay to the lessor in respect to each welting or stitching or sewing machine hereby leased the sum of One Hundred and Fifty (150) Dollars as partial reimbursement to the lessor for deterioration of the leased machinery, expenses in connection with the installation thereof and instruction of operators."

The amount of the stipulated payment varies in each contract, the leased machines being of great variety; under these contracts and in accordance with the sums therein fixed the Master allowed the sum of $1,994.99. But these contracts all contain the "repair clause" and under that clause the claimant has made claim for and been allowed the sum of $841.32, as the sum "necessary to put the leased machinery in suitable order and condition to lease to another lessee." No claim is made that there has been any expense actually incurred by claimant in the installation of the machines or instruction of operators. The sums for which claim is made are expressed to be in "partial reimbursement to the lessor for deterioration of the leased machinery"; the agreed statement, however, shows that the repair charges allowed were for "such repairs as restored the machines to their original condition." We are, therefore, impelled to the conclusion that the sums now claimed under the three contracts in question were lump sums fixed large enough to cover any possible cost of repairs necessary to restore the machinery to its original condition, and must be regarded as penalties. The claimant, having proved the actual cost of restoring the machines to their original condition, cannot also prove for the sum estimated to cover deterioration.

(c) Upon the four remaining contracts the Master allowed return charges of $1,042.50. None of these contracts provide for payment of the sums "necessary to put the leased machinery in suitable order and condition to lease to another lessee," and claim is not made therefor.

They all contain clauses providing for the payment to the lessor of certain fixed sums upon the expiration or termination of the contracts, either, as stated, "without prejudice to any other rights or remedies of the lessor," or "independently of and in addition to all other payments herein provided for."

These contracts must be regarded as creating liabilities of the same class considered in paragraph (a), and properly provable for the same reason. The debtor corporation undertook to pay these fixed sums, and we see no reason for refusing to recognize the obligation.

ROYALTIES AND RENTALS.

All the contracts provide for the payment on the last day of each calendar month, of the rent or royalties accruing from the use of the

machines during the next preceding calendar month, in whatever way the royalty was determined, and likewise in case of a fixed rental; affecting the above provision in all contracts was a clause, substantially as follows: "provided, however, that in all cases when the lessee shall pay to the lessor on or before the fifteenth day of the calendar month the rent or royalty due for the use of the leased machinery for the next preceding calendar month the lessor will in consideration of such prompt payment grant a discount of fifty per cent. from such rent or royalty due for such preceding calendar month."

. The creditor presented a claim for the full amount of the stipulated royalties and rentals, $766.20, and the Master allowed the same.

Counsel for the receiver contends that the liability for the royalty and rental items is only one half of the several amounts which the Master has allowed. His proposition is that the one hundred per cent. increase in the amount to be paid, if the rental is not paid by the middle of the month after it is earned, is a penalty and illegal.

The claimant insists that by clear and explicit language the contracts provide for a discount of fifty per cent. from the stipulated royalties and rentals for prompt payment anticipating the due date by not less than fifteen days, and that this case is no different, except perhaps in the amount of discount, from the usual discounts allowed in trade.

In support of this position reliance is placed upon two cases in the United States Circuit Court of Appeals, *United Shoe Machinery Co.* v. *Abbott*, 158 Fed., 762, and In re *Desnoyers Shoe Company*, 227 Fed., 16. In both cases cited the claimant here had proved its claims in the District Courts in Bankruptcy for the full amount, which in each case was reduced one half on the ground that the other fifty per cent. was an unlawful penalty. Upon appeal the judgments were reversed and the claims were allowed for the full amount, in the Abbott case by a divided court.

*Goodyear Shoe Mach. Co.* v. *Selz, Schwab & Co.*, 157 Ill., 186, is authority against the claimant's contention; if, as argued in Desnoyers's Case, there is any difference in the wording of the contracts under consideration in the two cases, that difference seems to us immaterial. The order in which the sums are stated does not change their character, or the legal effect of the instrument; for whether the amount to be paid is to be reduced upon compliance

with the terms of payment, or to be increased on a default, is only a different mode of expressing the same thing. *Longworth's Exrs.* v. *Askren et als.*, 15 Ohio St., 370, 375; *Seton* v. *Slade*, 7 Ves. Jr., 265, 273. Nor are the words "penalty," "forfeiture," "liquidated damages" or whatever other denomination may be given by the instrument, conclusive. *Dwinal* v. *Brown*, 54 Maine, 468. This rule seems to be generally recognized. See cases collected in 17 C. J., 938, Note 72. "All the cases on the subject agree that the mere language parties have used is to be legally molded into the form which their intent reveals." *May* v. *Crawford*, 142 Mo., 390; 44 S. W., 260. Thus although the contracts denominate the difference between the larger and the smaller sums as a discount, and have been phrased in terms appropriate to that denomination, the court is not precluded from seeking the intent of the parties to ascertain whether the smaller sum was in fact the actual debt, and the larger sum considered as a penalty. The question is one of construction of the contracts, and courts endeavor to learn the real intent of the parties to the contract, and if that can be ascertained, will be governed by it. *Burrill* v. *Daggett*, 77 Maine, 545. *Dwinal* v. *Brown*, 54 Maine, 468. *Jones* v. *Binford*, 74 Maine, 439. The language of the Massachusetts court in *Perkins* v. *Lyman*, 11 Mass., 76, 81 (1814) has been quoted and adopted by this court: "The question whether a sum of money mentioned in an agreement shall be considered as a penalty, and so subject to the chancery powers of this court or as damages liquidated by the parties, is always a question of construction, on which, as in other cases where a question of the meaning of the parties in a contract provable by a written instrument arises, the court may take some aid to themselves from circumstances extraneous to the writing. In order to determine upon the words used, there may be an inquiry into the subject matter of the contract, the situation of the parties, the usages to which they may be understood to refer, as well as other facts and circumstances of their conduct; although their words are to be taken as proved by the writing exclusively." *Burrill* v. *Daggett*, supra.

The opinion in *Desnoyers's Case*, supra, states: "While the intent of the parties determines what the actual debt is, and whether the larger amount includes a penalty, or the smaller amount is the result of a discount, that intent is to be found primarily from the language of the contract itself." And the court was very careful to say: "No

evidence of any kind has been introduced tending to show that the parties had in fact agreed upon the smaller amount as the actual rental, and that they, or the lessor, through some monopolistic power or otherwise, caused the real agreement to assume its present form for the purpose of concealing instead of expressing the mutual intent. In the absence of any such proof, the court would be substituting the contract that it thought the parties ought to have made for the one in fact made by them, if it held that to be a penalty which the parties, free to contract on any mutually agreeable terms, decided should be a true discount."

The question whether a stipulated sum is to be regarded as a penalty or not, usually arises where the written contract is for the doing of certain acts other than the payment of money, where the actual damages may, or may not be readily ascertainable, or wherein it is doubtful whether or not the parties intended to fix the amount of damages, in case of a breach, they being at liberty to do so.

But we think that the instant case more nearly falls within another class of cases, wherein the contracts are for the payment of money only, and the damages for failure to pay are fixed by law at legal interest. "If the instrument provides for the payment of a larger sum, on failure to pay a less one, the larger sum will be regarded as a penalty in respect to the excess over the legal interest, whatever be the language used. *Dwinal* v. *Brown,* supra; (an obvious typographical error occurs in this opinion; on Page 472, twenty-first line, "in future" should read "on failure"; the cases cited so show). *Mead* v. *Wheeler,* 13 N. H., 351. *Orr* v. *Churchill,* 1 H. Bl., 227. *Astley* v. *Weldon,* 2 Bos. & Pul., 346. *Longworth's Exrs.* v. *Askren et als.,* 15 Ohio St., 370. *Loudon* v. *Shelby Taxing Dist.,* 104 U. S., 771; 26 L. Ed., 923.

The older cases seem based upon the proposition that "the law, having by positive rules fixed the rate of interest, has bounded the measure of damages; otherwise the law might be eluded by the parties." Lord Loughborough in *Orr* v. *Churchill,* supra. But the rate of interest on a contract to pay money, other than loans secured by personal property, is a matter of contract in this State. R. S., Chap. 40, Sec. 41. We have, therefore, examined the facts of the case within the principles stated in *Burrill* v. *Daggett,* supra, with a view to ascertaining the actual intent of the parties, and are convinced that the actual rental to be paid by the lessee and collected

by the lessor is the smaller amount; that it was not the actual agreement that the lessee should pay the larger sum, and that the latter must be regarded as a penalty.

Upon examination of these seventeen contracts relating to fifty-eight machines, controlled by claimant, necessary for the equipment of a shoe factory, it is apparent that they have been drafted with much care and are designed to cover every possible contingency that could be foreseen, or that experience has disclosed. It is not too much to say that primarily they have obviously been drafted in the interest of the lessor; and to such an extent has this interest been paramount in the purpose of the draftsman that certain provisions, not, however, here material, have been found to violate the Clayton Act of October 15, 1914. *United Shoe Mach. Co.* v. *U. S.*        , U. S.,        . Obviously the parties did not meet on equal terms; the parties were not "free to contract on any mutually agreeable terms." In these complicated contracts if any doubt exists, it must be solved against the lessor, construing the larger sum as a penalty. *Dwinal* v. *Brown,* 54 Maine, 468, 472. The form of the contracts was obviously dictated by the lessor and the lessee could only acquiesce if he desired to make use of these highly developed machines in operating a shoe factory.

The stated case shows clearly enough the nature of the actual contract in the minds of the lessor's officers and managers. The greater part of these contracts were made in June, 1914, a few in December, 1915. We quote from the agreed statement:

"By the books of the defendant company it was shown that the rentals and royalties had not been paid by the defendant company while in operation until after the 15th day of the month, the date on which payment, by the language of the lease, should be made to entitle them to settle for 50 per cent. of the royalty specified, and in many instances not paid until long after that date. On the books was uniformly credited the net amount. Payments of 50 per cent. of the stipulated royalty had always been received by the Machinery Company in full settlement for the royalty."

We are not prepared to believe that this course of dealing, whereby the claimant collected during a period of nearly three years only one half of the amount which its counsel now says was collectible under the contract, was due to generosity or a spirit of forbearance.

The stated case discloses further information as to the practice of the claimant in collecting its royalties and rentals.   We again quote:

"Counsel for the claimant stated before the Master that it had not been generally the practice of the United Shoe Machinery Company to collect the full royalty charges if the lease went along in the ordinary course, even though payments were not made until after the time when, by the terms of the lease, the lessee would be entitled to the discount of 50 per cent., nor did the Company invariably exact the full amount of the so-called return charges on the expiration of the lease from a lessee whose dealings had been satisfactory, but adjustment was not infrequently made at a less amount."

This frank statement disclosed the exact attitude of the claimant; the words, "if the lease went along in its usual course," are significant; they unmistakably indicate that the smaller sum was the actual royalties and rentals to be paid.   The purpose of framing this plan of an alleged fifty per cent. discount to be obtained by anticipating the due date fifteen days is made clear as an attempt to place the lessor, in case of liquidation proceedings against the lessee, in a position to double the amount of the rentals and royalties which the lessee was to pay and the lessor to accept, but which were unpaid.

In view of the equitable principles which govern the proof of claims in proceedings of this kind, and the manifest unjust advantage which the claimant would otherwise obtain over other creditors, we think that the larger sums stated in the contracts must be regarded as penalties, and the claim for royalties and rentals as allowed by the Master reduced one half.

The Master's report will therefore be modified by deducting from the amount allowed on the claim of United Shoe Machinery Company the sums of $1,994.99 and $383.10, fixing said claim at $3,990.89.

It appears from the record before us that there are no other questions to be determined prior to distribution of the assets and a final decree; the mandate will therefore be,

> *Decree to be entered accepting the Master's report as modified by this opinion; final decree to be entered upon report of receiver, and final distribution ordered.*