WADE AND DUNTON, INC.

*vs.*

REUEL W. GORDON

Androscoggin.    Opinion, February 28, 1949.

*Benjamin L. Berman,*
*David V. Berman,* for plaintiff.

*John G. Marshall,* for defendant,

SITTING: STURGIS, C. J., THAXTER, MURCHIE, TOMPKINS, FELLOWS, MERRILL, JJ.

MURCHIE, J. Defendant's exceptions in this case, heard by a single Justice of the Superior Court without the intervention of a jury, with the right of exceptions reserved on questions of law, allege as errors that there was no consideration for what was found to be a contract justifying the recovery allowed and that the provision of that contract for the payment of the $400 awarded as liquidated damages imposed a penalty having no connection with actual damages, none such having been suffered.

A breach of contract by the defendant is undoubted, if there was a contract. The plaintiff is an automobile dealer, holding the Studebaker franchise, so-called. The defendant ordered a Studebaker car on August 16, 1946, signing a New Car Order and making a deposit of $50 against a purchase price which could not be determined until a car was available for delivery and decision was made as to what extra equipment, if any, was to be installed. The order was not binding upon the plaintiff until accepted by one of its officers, but there was express recital that the plaintiff might retain "deposits sufficient to cover liquidating damages" if it was cancelled by the defendant. When the order was signed the plaintiff was not requiring those to whom cars were sold to contract against their resale within a stated period, but that policy had been adopted some months prior to the sale in question.

The defendant's order was never accepted by the plaintiff unless acceptance is to be inferred from the fact that approximately 20 months after it was signed the plaintiff notified the defendant that a car was available. The date of the notification is not given in the testimony but the defendant's wife called at the plaintiff's place of business on Thursday, June 17, 1948, saw the car and ordered extra equipment. On June 19, 1948, the defendant wrote the plaintiff saying that he would be unable to take the car and would appreciate being advised when another was available.

The plaintiff received the letter on June 21, 1948. Later that day the defendant appeared, paid for the car, signed a contract undertaking not to sell or transfer title to it for a period of 6 months without first offering it to the plaintiff at the price paid "less depreciation" at a stated rate, drove it away, and sold it in direct disregard of the contract. These facts are stipulated. The defendant did not take the stand. The record is silent as to the price obtained or the identity of the purchaser paying it.

The action was brought on the contract, quoted verbatim in the declaration. According to a recital of its preamble the defendant executed it "as a part of the consideration" of the sale. The plea was the general issue with a brief statement describing the instrument signed as "a document" and alleging that it was signed after the purchase of the car was completed; that it "provides for a penalty"; and that the plaintiff "has suffered no damages."

While two issues are raised, one of them must be resolved within the established principles that factual decisions made by a trier of facts are conclusive, if there is any evidence to support them, *Chabot & Richard Co.* v. *Chabot*, 109 Me. 403; 84 A. 892; *Graffam* v. *Casco Bank & Trust Co.*, 137 Me. 148; 16 A. (2nd) 106; and that where no specific findings are made it must be assumed that a decision carries such findings as are necessarily involved in it. *Chabot & Richard Co.* v. *Chabot, supra.* This disposes of the consideration issue. Assuming that the evidence would have supported a finding that the defendant had purchased and paid for the car before signing the contract restricting his right of resale, to bring the case within the principle controlling such decisions as *White* v. *Oakes et al.,* 88 Me. 367; 34 A. 175; 32 L. R. A. 592; there can be no doubt that it gives adequate support to the opposite finding implicit in the award, i. e. that the sale and the signing of the contract constituted a single transaction.

The question whether the contract provision for the payment of $400 liquidated the damages to be recovered by the plaintiff in the event of a breach by the defendant, or sought to impose a penalty on the defendant, is one of law. 15 Am. Jur. 673, Sec. 242, states this to be the general rule despite authority to the contrary. That is said to be well settled in a note following the report of the English case *Webster* v. *Bosanquet,* (1912) A. C. 394; Ann. Cas. 1912 C. 1019. See also *Robbins et al.* v. *Plant,* 174 Ark. 639; 297 S. W. 1027; 59 A. L. R. 1128, and the annotation following the case as reported in A. L. R.

The considerations which are controlling in determining whether a contract carries an enforceable provision for liquidated damages or an unenforceable penalty have been well stated by this court in *Dwinel* v. *Brown,* 54 Me. 468, and *Burrill* v. *Daggett,* 77 Me. 545; 1 A. 677. See also *Maybury* v. *Spinney-Maybury Co.,* 122 Me. 422 at 434; 120 A. 611 at 616, where an obvious typographical error in the opinion in *Dwinel* v. *Brown, supra,* is noted. The facts of the instant case are typical of those which justify agreement for the payment of liquidated damages, since the elements of damage are difficult of measurement in terms of money, particularly those which relate to losses in good will and future business. The decision of the single justice that the contract in question liquidated the damages instead of imposing a penalty on the defendant was fully justified.

It seems unnecessary on the particular facts to consider to what extent, generally, contracts purporting to limit the right of a purchaser of personal property to resell it without restriction should be recognized as lawful, or be declared unenforceable as intended to impose unlawful restraints. The particular contract dealt with personal property which was for a long period of time the subject matter of public regulatory authority in transactions between the manufacturer, or its distributing agents, such as the plaintiff, and the original purchaser. Courts cannot be unaware

that price regulation existed; that it produced markets sometimes described as either "black" or "gray"; and of the nature of those markets. There can be no doubt that the real purpose of the contract in question was to keep the car to which these proceedings relate out of the black market, the gray market or any market except one entirely legitimate. It is noted in 62 Harv. L. R. at Page 320, in a discussion of *Larson Buick Co.* v. *Mosca et al.,* 79 N. Y. S. (2nd) 654, that while the subject matter has been dealt with by numerous writers and repurchase options have been upheld wherever challenged, no case involving one "has as yet reached a court of last resort." In the *Larson* case decision that such a contract was enforceable was implicit in the holding that one buying a motor vehicle from a purchaser who had contracted not to resell it within a stated period except in a declared manner (other than that which the buying represented), if joined as a co-defendant with the offending contractor, might be temporarily enjoined, pending trial, from making a further sale of it. Notwithstanding the fact that public regulation in the field had stopped prior to the date when the defendant purchased the particular car, the facts that cars continued to be in short supply and that that short supply led to irregular markets are proper subjects for judicial notice. Without present consideration of the problem as to how far restraints on the alienation of personal property may go under normal circumstances, we have no hesitation in declaring the restriction imposed by the particular contract a lawful one.

*Exceptions overruled.*